Gwendolyn Y. **BELL**, et al.

v.

**MAY DEPARTMENT STORES COMPA-NY, a New York corporation, d/b/a Hechts, Appellant.**

No. 88–7018.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1988.

Decided Jan. 24, 1989.

As Amended Jan. 24, 1989.

Before MIKVA and D.H. GINSBURG, Circuit Judges, and MAX ROSENN,* U.S. Senior Circuit Judge for the Third Circuit.

Opinion for the court filed by Senior Circuit Judge ROSENN.

Dissenting opinion filed by Circuit Judge MIKVA.

ROSENN, Senior Circuit Judge:

The sole issue on this appeal is whether plaintiffs are entitled to rely upon the principle of *res ipsa loquitur* to prove their claim of negligence. This diversity action arises out of personal injuries sustained by appellee-plaintiff Gwendolyn Bell when she was caught between two elevator doors as she attempted to enter an automatic elevator operated and maintained by appellant-defendant, May Department Stores, doing business as Hechts (Hechts), in Washington, D.C. Bell and her husband, Adville, (plaintiffs or appellees) sought damages for the injuries sustained as well as damages for loss of consortium. The United States District Court for the District of Columbia denied Hechts' motion for directed verdict and, over the defendant's objections, instructed the jury on the principle of *res ipsa loquitur*. The jury returned a verdict for the plaintiffs, awarding them a total of $108,195.14. The district court denied the defendant's subsequent motions for a judgment notwithstanding the verdict (judgment NOV) and, in the alternative, for a new trial. The defendant appealed, and we reverse.

## I.

The material facts in this case are not in dispute. On the afternoon of July 26, 1985, Bell attempted to enter passenger elevator No. 3 on the fifth floor of the Hechts store when the doors came together, trapping her between them and causing injuries. According to plaintiffs, Bell did not delay in entering the elevator, nor did she hear any warning bells or buzzers. Plaintiffs were unable to provide any eyewitnesses to the incident.

Edward C. Bacon, Annapolis, Md., with whom Patricia M. Thornton, Washington, D.C., was on the brief, for appellant.

Jacob A. Kamerow, with whom Jeffrey M. Hamberger, Washington, D.C., was on the brief, for appellees.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

The elevator, manufactured by Otis Elevator Company, was originally installed as a manual elevator in 1924. In either 1966 or 1967, Hechts replaced all elevator cars (except the frames), and made all the control devices fully automatic. No other major renovations or repairs of the elevator were undertaken before the date of the incident.

Included in the control devices installed in the elevator doors were electronic automatic reversing devices, known as "electronic safety edges." The electronic safety edge operates in a manner similar to an electronic eye; when the edge detects a person standing between the elevator doors, it will cause the doors to reverse when they come within three inches of that person.[1]

The plaintiffs relied entirely on the testimony of defendant's engineers to establish the operation of the store's elevators and the procedures employed by Hechts for their maintenance and inspection. Roy Lambert, chief engineer for Hechts, testified for plaintiffs about Hechts' specific maintenance and inspection procedures for the elevators and the electronic safety edge. Specifically, Lambert testified that the only "wear and tear" parts associated with the safety edge were the detection tubes and the amplifier tubes; the remainder of the system was "solid state." Pursuant to the maintenance program, all detection and amplifier tubes were scheduled to be replaced every November as a matter of course and were otherwise replaced on an "as needed" basis. Because Hechts did not maintain any maintenance records, however, there was no evidence as to when the tubes were, in fact, last replaced.

David Novak, the "first-class engineer" employed by Hechts, also testified for the plaintiffs about the maintenance and inspection of the elevators. Novak testified that the elevators were inspected on a daily basis on each floor of the building for proper working condition. The procedure included both an initial warm-up for the amplifier which controlled the safety edge and an actual, physical test of the safety edge for each elevator in the store. The daily inspection procedures began approximately at 8:00 A.M. and were completed before the first customer was admitted into the store.

Both Lambert and Novak identified a variety of factors that might cause the safety edge to malfunction. These included physical abuse (e.g, striking the edge with an object such as a shopping basket or hand truck), vibrations, a blown tube, or "simply going out of adjustment as a television set would occasionally go out of adjustment." Lambert further testified that "[t]he majority of time it was physical damage as a result of someone running into it" that would cause the malfunction.

Plaintiffs did not produce any evidence demonstrating the actual cause of the malfunction, nor did they produce evidence tending to show that defendant had any prior notice or knowledge that the elevator doors were malfunctioning prior to the accident. In addition, plaintiffs did not produce any evidence tending to show that the inspection and maintenance program employed by Hechts was either inadequate to satisfy its standard of due care or improperly executed.

Because the plaintiffs produced no direct evidence of negligence, they relied on the principle of *res ipsa loquitur* to prove their case. Defendant moved for a directed verdict at the conclusion of plaintiffs' evidence as well as at the conclusion of all the evidence. Both motions were denied on the

1. The elevators also contained a second safety feature, the "force close feature," which overrides the electronic safety edge. This built-in feature is intended to close the doors slowly and thereby "nudge out" a person standing between the doors. After the elevator doors have been kept open for a period of approximately 20 to 30 seconds, the force close feature causes the doors to close at approximately one-third the normal speed. A buzzer and/or alarm will sound simultaneously to warn the passengers that the doors are closing. During operation of this feature, the electronic safety edge will not operate and the doors will not, therefore, reverse. Because Mrs. Bell did not recall either hearing a buzzer or alarm, or the doors closing at a reduced speed, and because she recalled no delay in entering the elevators, both parties agree that the force close feature was not in effect at the time of the accident.

ground that plaintiffs had made out a prima facie case of negligence by relying on *res ipsa loquitur*. The district court instructed the jury on the rule of negligence and, over defendant's objections, also instructed the jury on the principle of *res ipsa loquitur*. The jury returned a verdict for plaintiffs.

## II.

■ We apply the same criteria for review of the court's denial of a motion for judgment NOV as we do for review of a directed verdict. The court must consider all the evidence available in the light most favorable to the non-movant, resolving all conflicts in the evidence in favor of the prevailing party below. *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 827 (D.C. Cir.1988); *Grogan v. General Maintenance Serv. Co.*, 763 F.2d 444, 447 (D.C. Cir.1985). The jury's verdict will be upheld unless, giving the non-movant "the advantage of every fair and reasonable inference that the evidence may permit, there can be but one reasonable conclusion drawn [in favor of the movant]." *Richardson*, 857 F.2d at 827; *see also Grogan*, 763 F.2d at 447.

■ The principle of *res ipsa loquitur* permits a jury to draw an inference of negligence based upon special circumstances where direct evidence of negligence is lacking. *Stewart v. Ford Motor Co.*, 553 F.2d 130, 141 (D.C.Cir.1977); *Prosser and Keeton on the Law of Torts* § 39 (5th ed. 1984). Before submitting the case to the jury, it is the "function of the court to determine whether the inference may reasonably be drawn by the jury or whether it must necessarily be drawn." Restatement (Second) of Torts § 328D(2) (1965). The principle, however, does not relieve plaintiff of the burden of proving the essential elements of negligence; it merely permits

the case to go to the jury. *See Sweeney v. Erving*, 228 U.S. 233, 240–41, 33 S.Ct. 416, 418–19, 57 L.Ed. 815 (1913); *Stewart*, 553 F.2d at 138; *see also* Prosser, *supra*, § 40, at 258. Even when instruction on the principle is appropriate, the jury is not compelled to return a verdict for plaintiff. *See Sweeney*, 228 U.S. at 240, 33 S.Ct. at 418; *D.C. Transit Sys., Inc. v. Slingland*, 266 F.2d 465, 469 (D.C.Cir.), *cert. denied*, 361 U.S. 819, 80 S.Ct. 62, 4 L.Ed.2d 64 (1959).

■ The mere occurrence of an accident, moreover, does not necessarily permit a jury to infer negligence. *See Rassoulpour v. Washington Metro. Area Transit Auth.*, 826 F.2d 98, 100 (D.C.Cir.1987). At the threshold, plaintiff must establish the following three essential factors before *res ipsa loquitur* will be interposed:

(1) The event must be of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it must not have been due to any voluntary action or contribution on the part of plaintiff.

*Id.* at 100 (quoting *Londono v. Washington Metro. Area Transit Auth.*, 766 F.2d 569, 571 (D.C.Cir.1985)).

■ Although the criteria for *res ipsa loquitur* are generally set forth as separate requirements, they are treated by the courts as interrelated and interdependent factors. In particular, although the first element requires that the accident be of the kind that does not ordinarily occur in the absence of negligence, the principle does not relieve the plaintiff of showing that the defendant's negligence most probably caused the accident.[2] *See, e.g., Lazarus v. Eastern Air Lines, Inc.*, 292 F.2d 748, 750 (D.C.Cir.1961); *Quin v. George Washington University*, 407 A.2d 580, 584–85 (D.C.

---

**2.** Although this court generally expresses the doctrine as stated above, we have also recognized that this formulation is the equivalent to an earlier statement by the District of Columbia: The party relying on *res ipsa loquitur* must establish that "the cause of an accident is (1) known, (2) in the defendant's control, and (3) unlikely to do harm *unless the person in control*

is negligent." *Washington Sheraton Corp. v. Keeter*, 239 A.2d 620, 622 (1968) (emphasis added), *quoted in Londono*, 766 F.2d at 571.

The force of this earlier, alternative formulation is that it makes clear that *res ipsa loquitur* is only appropriate where the cause of the accident is properly and most probably attributable to the defendant.

App.1979); *Ford v. District of Columbia,* 190 A.2d 905, 906–07 (D.C.App.1963). The indispensable requirement that plaintiff "bring [the negligence] home to the defendant," *Prosser, supra,* § 39, at 248, is what plaintiffs here have failed to establish, thus rendering the principle inapplicable in this case.

▮▮▮▮ Reliance on *res ipsa loquitur* is recognized as an evidentiary tool to establish defendant's negligence in special circumstances; however, it requires more than mere speculation. As this court has recognized, "[r]es ipsa loquitur requires that there be no probable explanation for the occurrence except the negligence of the defendant." *Lazarus,* 292 F.2d at 750; *see also Pennsylvania R.R. Co. v. Pomeroy,* 239 F.2d 435, 446 (D.C.Cir.1956) (various equally plausible conjectures other than defendant's negligence render doctrine inapplicable), *cert. denied,* 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859 (1957). Plaintiff must establish not only that the accident possibly resulted from defendant's negligence but that, given the other possibilities, the defendant's negligence most probably caused the accident. Accordingly, one cannot rely on *res ipsa loquitur* if causes other than the defendant's negligence might just as well have produced the accident:

> [P]laintiff must exclude those other causes by a preponderance of the evidence, for otherwise it would be sheer speculation to conclude that the cause of the accident was one within defendant's control; or put [another] way, plaintiff's proof must at least show that it was more probable than not that the accident was the result of a defendant's negligence.

*Ford,* 190 A.2d at 907 (footnotes omitted) (refusing to apply the principle where plaintiff's proof, by failing to exclude other

probable causes of damage, did not establish defendant's negligence as most probable cause); *see also Marshall v. Townsend,* 464 A.2d 144, 145–46 (D.C.App.1983) (mere speculation as to cause of water leaks insufficient for *res ipsa loquitur* where defendant's negligence is only one of many plausible causes); *Quin,* 407 A.2d at 584–85 (principle inapplicable where testimony establishes two equally plausible causes for injury, one of which involves no negligence on part of defendant); *Pratt v. Freese's Inc.,* 438 A.2d 901, 904–05 (Me. 1981) (principle of *res ipsa loquitur* not applicable merely because elevator malfunctioned where evidence fails to exclude responsible non-negligent causes).[3]

Under circumstances strikingly reminiscent of this case, the district court recently held in *Hafferman v. Westinghouse Electric Corp.,* 653 F.Supp. 423 (D.D.C.1986), that the failure to exclude other potential causes of the injury not involving defendant's alleged negligence deprived plaintiffs of the benefit of *res ipsa loquitur.* In *Hafferman,* plaintiff was injured when the elevator failed to level properly. Plaintiffs presented evidence that the elevator had been serviced the previous month for the same problem. Plaintiffs' expert witness also testified, however, that the elevator could mislevel in the absence of negligence. In holding that plaintiffs were not entitled to instructions on *res ipsa loquitur,* the court relied exclusively upon plaintiffs' failure to establish that the accident would not ordinarily occur in the absence of defendant's negligence. Although the decision in *Hafferman* is not binding upon this court, we find its reasoning persuasive.

Several factors, all relevant here, led the *Hafferman* court to conclude that *res ipsa loquitur* was inappropriate. First, the court, noting that plaintiffs' own witness

---

**3.** Despite evidence produced by plaintiffs that the elevator malfunction could have been caused by a number of sources over which the defendant had no responsibility or control, the dissent would permit a jury to infer defendant's negligence, "subject to rebuttal," solely upon evidence that the "defendant had exclusive control over the instrumentality that caused the accident, and that plaintiffs did not contribute to

the accident." Dissent op. at p. 459. The dissent would thereby transform the principle of *res ipsa loquitur,* which is essentially an evidentiary tool to be used in special circumstances, into a rule of law which would hold defendant liable notwithstanding evidence that the accident could have occurred in the absence of defendant's negligence.

testified that leveling problems may occur from time to time in the absence of negligence and despite good maintenance, concluded that "[s]uch an admission destroys any *res ipsa* inference that could be drawn." *Hafferman*, 653 F.Supp. at 433.

Second, the court observed that, in addition to a lack of any direct evidence of negligence, plaintiffs were unable to establish defendant's negligence through circumstantial evidence. As the court stated, "[p]laintiffs can point to no instance where Hilton failed to inform Westinghouse of a problem, to no instance where Westinghouse did not respond, and to no instance where Westinghouse failed to properly effect repair." *Id.*

Finally, the court rejected plaintiffs' contentions that evidence of a repair of the same problem one month earlier established a sufficient probability of defendant's negligence. The court reasoned that:

> A defect could have arisen so closely to the occurrence of the accident that defendants would have had no opportunity to discover it. It is thus sheer speculation to make any conclusion as to the cause of this elevator's failure to level properly. Plaintiffs' claim that negligence caused the malfunction is specious.

*Id.* The court ultimately concluded that "[*r*]es ipsa is therefore inapplicable since there has been no showing that negligence was the predominant or the only reasonable explanation for the accident." [4]

Here, plaintiffs are plagued by the same problems which defeated the application of *res ipsa loquitur* in *Hafferman*. Plaintiffs' own evidence establishes that the malfunction of the safety edge could have resulted from a number of causes, some of which did not necessarily involve any negligence on the part of defendant. Specifically, the testimony revealed that the malfunction could have resulted from physical contact with a shopping cart, hand truck, or some other durable object, from vibrations affecting the detection and amplifier tubes, or from "simply going out of adjustment as a television set would occasionally go out of adjustment." Plaintiffs made no effort either to rebut the non-negligent causes or to identify defendant's alleged negligence as the most probable cause of the injury.[5]

Plaintiffs also made no attempt to prove that defendant was on notice or should have known that the elevator car was in a defective condition. As the court observed in *Hafferman*, the defect, if any, could have occurred mere seconds before the injury, leaving defendants no time in which to discover and correct the problem.[6] Consequently, here, as in *Hafferman*, it would be sheer speculation to conclude that the cause of the defect was due to the negligence of the defendant. Because the principle requires more than sheer speculation, plaintiffs have failed to establish the essen-

---

**4.** A similar analysis was employed in *Pratt v. Freese's, Inc.*, 438 A.2d 901 (Me.1981). In *Pratt*, as in this case, plaintiff was injured when the elevator safety device malfunctioned, and the doors closed on plaintiff. The court observed that although plaintiffs inquired as to several possible problems with the elevator, they did not present any evidence describing a possible mechanical cause for the malfunction. The court, noting that the principle of *res ipsa loquitur* is only applicable when defendant's negligence is the predominant or the only reasonable explanation for the accident, found (1) that plaintiff had failed to show that a defect existed at the time of the accident which defendant could have remedied with the exercise of due care; (2) that there was no evidence that defendants had prior knowledge of the defect or that defendants had failed to maintain the elevators in a safe condition; and (3) that responsible causes not involving negligence were not ex-

cluded. The court affirmed the grant of the directed verdict for defendants, stating that "it would have been sheer speculation for the jury to infer that the accident was caused by some negligent act of one of the defendants simply because the accident had in fact occurred." *Pratt*, 438 A.2d at 904.

**5.** In closing argument, plaintiffs' counsel did refer to Exhibit 11 (the accident report form) from which Novak, the engineer who had earlier testified as to the daily inspection routine at Hechts, could not identify when the elevator was last inspected. The point, we gather, was to call into doubt the earlier testimony on maintenance practices. This, however, is hardly enough to support an inference of negligence.

**6.** Notably, the report filed by Novak immediately following the incident stated that an investigation revealed "Nothing defective."

tial conditions for instruction on *res ipsa loquitur.*

Notwithstanding plaintiffs' failure to establish the elements of *res ipsa loquitur,* the dissent would permit instruction on the principle "[i]n the light of everyday experience that elevator doors simply do not ordinarily close on passengers in the absence of negligence." Dissent op. at 460. This observation not only ignores the basic precept that it is the defendant's negligence that must be proven, it is at odds with the uncontradicted testimony of plaintiffs' experts that elevator malfunctions may occur for reasons entirely unrelated to the defendant's negligence. Whatever a layperson may infer from "everyday experience" has thus been overcome by the more particularized and informed knowledge on elevator operation presented here.

The cases cited by plaintiffs do not persuade to the contrary. Plaintiffs primarily rely upon *Otis Elevator Co. v. Henderson,* 514 A.2d 784 (D.C.App.1986), and cases cited therein. At first glance, *Otis Elevator* appears to favor plaintiffs and to be dispositive. The cause of the injury sustained by plaintiff is identical; the electronic safety edge of an elevator failed, trapping plaintiff between its doors and causing injury. The court in *Otis Elevator* ultimately concluded that the jury was properly instructed on *res ipsa loquitur.* 514 A.2d at 786.

The similarities between the cases however begin and end with the recital of the facts. Unlike the situation here in which defendant contends that plaintiffs failed to establish the essential elements of the principle, the defendant in *Otis Elevator* did not challenge the court's finding that the elements of the doctrine were established. The only issue on appeal was whether plaintiffs had proved the cause of the malfunction with sufficient specificity so as to render reliance upon the principle inappropriate. Consequently, the court was never called upon to apply the elements of the principle at issue here to the facts presented.

Plaintiffs would have us circumvent this problem by finding that the court implicitly addressed the threshold issue as evidenced by its citation to *Bell v. Westinghouse Electric Company,* 483 A.2d 324, 329 (D.C. App.1984) which, in turn, cites to cases applying the principle. We must decline to follow such a suggestion. Even if plaintiffs' attempt to manipulate the holding in *Otis Elevator* were valid, the cases cited therein provide no support for their position. There, the courts focused on whether the jury may rely upon its common knowledge of elevators to draw the inference of negligence from an injury thereon. *See Sanone v. J.C. Penney,* 17 Utah 2d 46, 404 P.2d 248 (1965); *J.C. Penney v. Livingston,* 271 S.W.2d 906 (Ky.1954). In neither of those cases, however, did the court address the exact situation presented in this case where plaintiffs have produced evidence tending to establish that there were equally probable causes for the injury, some of which did not involve defendant's alleged negligence. Where this issue has been addressed, moreover, the principle of *res ipsa loquitur* has been held to be inapplicable. *Lazarus,* 292 F.2d at 750; *Pennsylvania R.R. Co.,* 239 F.2d at 446; *Hafferman,* 653 F.Supp. at 433; *Marshall,* 464 A.2d at 145–46. Therefore, the decision in *Otis Elevator* is neither dispositive of nor applicable to this case.

### III.

Because *res ipsa loquitur* was inapplicable on the proof presented and because the plaintiffs produced insufficient evidence of negligence, we are constrained to hold that it was error to deny the defendant's motions for a directed verdict. The judgment of the district court will be vacated and the case remanded with direction to enter judgment for the defendant.

MIKVA, Circuit Judge, dissenting:

*Res ipsa loquitur* is a convenient invention of the common law; it has permitted judges and juries to make appropriate assignments of the risks of accidents where the facts do not lend themselves to the familiar contours of traditional negligence law. It has provided a flexible and practical evidentiary doctrine that has allowed fact-finders to "fill in the blanks" in cases

where the exact causes of an accident are either unknown or unknowable. I fear, however, that my colleagues in this case have so wrenched the *res ipsa loquitur* doctrine from these moorings and given it such rigid dimensions that it will no longer successfully serve those previous purposes.

The majority finds that a department store elevator door's closing on a customer is, as a matter of law, an event that ordinarily occurs without negligence; I would hold otherwise and permit the jury to infer, from the evidence presented, that such an event ordinarily does *not* occur without negligence. Accordingly, I would affirm the district court's decision to give a *res ipsa loquitur* instruction to the jury.

As the majority correctly states, and as the district court properly instructed the jury, "[t]he principle of *res ipsa loquitur* permits a jury to draw an *inference* of negligence upon special circumstances where direct evidence of negligence is lacking." Maj.Op. at 455 (emphasis added) (citations omitted); *see also Sweeney v. Erving*, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815 (1913). Moreover, "[a]lthough the criteria for *res ipsa loquitur* are generally set forth as separate requirements, they are treated by the courts as interrelated and interdependent factors." Maj.Op. at 455.

Where the majority errs, in my view, is its assertion that "[t]he indispensable requirement that plaintiff 'bring [the negligence] home to the defendant' is what plaintiffs here have failed to establish, thus rendering the principle inapplicable in this case." *Id.* at 456 (citation omitted). The first element of the test for *res ipsa loquitur*, however, is only that "[t]he event must be of the kind which ordinarily does not occur in the absence of *someone*'s negligence:" *Rassoulpour v. Washington Metro. Area Transit Auth.*, 826 F.2d 98, 100 (D.C.Cir. 1987) (emphasis added) (citation omitted). The majority fails to appreciate that there is no dispute that the accident was caused by an instrumentality in the defendant's exclusive control and that the accident was not due to any voluntary action by the plaintiffs. It is precisely the *interrela-*

*tionship* among the three threshold elements, not any one element, that "bring[s] the negligence home to the defendant." I would therefore hold that plaintiffs in this case, having shown that the accident is of the type that does not ordinarily occur without negligence, that defendant had exclusive control over the instrumentality that caused the accident, and that plaintiffs did not contribute to the accident, have met the three prerequisites for permitting the jury to *infer*, subject to rebuttal, defendant's negligence.

More importantly, in holding that *res ipsa loquitur* does not apply in this case because plaintiffs have not established that "the defendant's negligence most probably caused the accident," Maj.Op. at 455, the majority effectively conflates the three-part threshold test for applying the doctrine into a single requirement that the plaintiff prove by a preponderance of the evidence that the defendant was negligent. Indeed, the majority's reasoning significantly undermines the *res ipsa loquitur* doctrine, because if the plaintiff could "bring the negligence home to the defendant," i.e., prove with direct evidence that the defendant was negligent, then a *res ipsa loquitur* instruction would never be necessary.

The majority's reliance on the case law is also misplaced. The doctrine of *res ipsa loquitur* in the District of Columbia clearly permits jurors to make a common-sense inference that defendants in this case were negligent. *See, e.g., Otis Elevator Co. v. Henderson*, 514 A.2d 784, 785 (D.C.1986) (affirming *res ipsa loquitur* instruction even though "any one or more of a number of specific mechanical defects could have led to [the cause of the accident]"); *Bell v. Westinghouse Electric Corp.*, 483 A.2d 324, 329 (D.C.1984) (*res ipsa loquitur* appropriate where "direct evidence of negligence is lacking, or where there is 'little evidence,' or where the cause of the injury is left in doubt by the evidence or not clearly shown") (citing *Levy v. D.C. Transit System, Inc.*, 174 A.2d 731, 733 (D.C. 1961)); *McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256, 1261 (D.C.App. 1983) (for *res ipsa loquitur* to apply, plain-

tiff need not "eliminate with complete certainty every other possible cause or inference"); *cf. Londono v. Washington Metro. Area Transit Auth.,* 766 F.2d 569, 571–75 (D.C.Cir.1985) (*res ipsa loquitur* applies where child suffered lacerations of unknown cause while riding defendant's escalator).

The majority places great reliance on *Hafferman v. Westinghouse Electric Corp.,* 653 F.Supp. 423 (D.D.C.1986), even though that case is not controlling here and is readily distinguishable. In *Hafferman,* the court found that plaintiffs had neither circumstantial evidence of defendant's negligence nor "the slightest shred of direct evidence of negligence." *Id.* at 433. The *Hafferman* court concluded that "[i]t is thus sheer speculation to make any conclusion as to the cause of this elevator's failure to level properly." *Id.* Unlike the plaintiffs in *Hafferman,* however, plaintiffs in the instant case did not rely on "sheer speculation" to allow the jury to infer defendant's negligence. Although plaintiffs' experts (defendant's engineers) testified that a variety of factors could have caused the electronic safety edge to malfunction, *see* Trial Transcript ("Tr.") at 16, 53, Appendix ("App.") at 29, 66, plaintiffs also established that defendant could not identify whether or when, prior to the accident, the "wear-and-tear" parts had been properly replaced or the safety edge properly maintained, *see* Tr. at 17–18, 37–41, App. at 30–31, 50–54. In light of the evidence, considered as a whole, the majority's *ipse dixit* that "it would be sheer speculation to conclude that the cause of the defect was due to the negligence of the defendant," Maj.Op. at 457, is simply overstated.

If the district court decision in *Hafferman* stands for the proposition assigned to it by the majority, then I think it is neither good law nor in accord with the precedents that do bind us. *Cf. Prosser and Keeton on the Law of Torts* § 40, at 261–62 (5th ed. 1984) ("If the defendant seeks a directed verdict in his favor, he must produce evidence which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable persons could

no longer accept it. \* \* \* But if the defendant merely offers evidence of his own acts and precautions amounting to reasonable care, it is seldom that a verdict can be directed in his favor."). We ought not set aside well-settled principles and precedents of *res ipsa loquitur* doctrine on such chimerical grounds.

Likewise, the majority misreads *Otis Elevator Co. v. Henderson,* 514 A.2d 784 (D.C. 1986), in an attempt to distinguish it from the instant case. Maj.Op. at 458. The majority, conceding the factual similarities between the two cases, contends that the court in *Otis Elevator* "was never called upon to apply the elements of the principle at issue here to the facts presented," and that therefore *Otis Elevator* is of no precedential value to this case. *Id.* at 458. I submit that, because it was beyond question that in *Otis Elevator* the elements of *res ipsa loquitur* applied to the facts, it is hardly surprising, much less a basis for distinction, that the issue was not raised in that case. In the light of everyday experience that elevator doors simply do not ordinarily close on passengers in the absence of negligence, a *res ipsa loquitur* instruction was proper in *Otis Elevator* and, by the same analysis, is appropriate in this case as well.

Finally, I emphasize that this court is in a singularly weak position to second-guess inferences properly left to the jury. When reasonable minds can differ over the inferences to be drawn from the evidence presented at trial, our system of justice entrusts the jury, which has the opportunity to observe the evidence first-hand, to resolve such disputes. In the case *sub judice,* because the jury may reasonably and properly have discounted the self-serving and unsubstantiated assertions of defendant's engineers, the possibility that defendant was negligent under the proof offered was at least as great as the possibility that defendant exercised due care. I am therefore unable to conclude (as the majority does), after considering the evidence as a whole in the light most favorable to plaintiffs, as we must, *see* Maj.Op. at 455, that no reasonable jury could find for the plain-

tiffs. The trial judge properly denied defendant's motions for a directed verdict, allowed the jury to infer negligence based on plaintiffs' *res ipsa loquitur* theory, and denied defendant's subsequent motion for a judgment notwithstanding the verdict. By holding otherwise, our decision today disserves not only the doctrine of *res ipsa loquitur*, but the even more important doctrine of deference to fact-finders on matters within their province. I would affirm the district court in all respects.