Viola C. JONES, Plaintiff,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
Defendant.

Civ. A. No. 89–1259 (CRR).

United States District Court,
District of Columbia.

Aug. 7, 1990.

Edward C. Bou, Washington, D.C., for plaintiff.

Janet Rubin Landesberg, Robert J. Kniaz, and Robert L. Polk, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The plaintiff is suing the Washington Metropolitan Area Transit Authority ("WMATA") for personal injuries sustained when the heel of her shoe became caught in the slot of an escalator tread at the L'Enfant Plaza Metro station, causing her to fall two steps.[1] The plaintiff alleges that: (a) WMATA breached its duty to design reasonably safe escalators; (b) WMATA breached its duty to adequately maintain, inspect, or repair its escalators; (c) WMATA breached its duty to warn passengers of the danger of the heels of their shoes getting caught in the escalator tread slots; (d) WMATA knew or should have known that the escalator did not comply with express or implied warranties that it was suitable for its intended and foreseeable purpose; (e) the plaintiff's catching the heel of her shoe necessarily occurred as a result of WMATA's negligence; and (f) WMATA should have provided passengers with alternative readily accessible modes of transport within the Metro station. WMATA has filed a summary judgment motion, which the Court will grant because there are no material facts in dispute.

### A. Negligent Design

It is well-established that WMATA is a quasi-governmental entity created and governed by an "interstate compact" among Maryland, Virginia, and the District of Columbia. See, e.g., D.C.Code Ann. § 1–2431 (hereinafter "WMATA Compact"); Morris v. WMATA, 781 F.2d 218, 219 (D.C.Cir. 1986) (citing Washington Metropolitan Area Transit Authority Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966)). The WMATA Compact contains a limited waiver of WMATA's sovereign immunity, providing in pertinent part that WMATA "shall be liable for its . . . torts and those of its Directors, officers, employees, and agents committed in the conduct of any *proprietary function* . . . but shall *not be liable for any torts occurring in the performance of a governmental function.*" WMATA Compact § 80, D.C.Code Ann. § 1–2431 (emphasis added).

█ The case law is clear that WMATA's policy decisions and judgments regarding the design of the escalator and the width of the slots in the escalator treads are governmental functions. For example, this Court has held that "planning decisions regarding the design, location, and construction of [a] stairwell involved WMATA's governmental function" and has noted that "[g]overnmental functions are those functions which are for the benefit of the general public . . . includ[ing] planning decisions or decisions involving governmental discretion." *Nathan v. WMATA*, 653 F.Supp. 247, 248–49 (D.D.C.1986) (citations omitted). Other cases have invoked governmental function immunity to reject similar negligent design claims against WMATA. *See, e.g., Dant v. District of Columbia*, 829 F.2d 69, 75 (D.C.Cir.1987) (approving dismissal on sovereign immunity grounds of plaintiff's claim alleging that WMATA negligently designed its automated farecard system); *Simpson v. WMATA*, 688 F.Supp. 765, 767 (D.D.C.1988) ("It is clear that WMATA's design decision concerning the distance of the gap between the platform and the subway train constitutes a discretionary decision and falls squarely within the parameters of WMATA's governmental function."). In light of the foregoing, the Court holds that WMATA's design decision is cloaked with sovereign immunity and that the plaintiff's negli-

---

1. The Complaint also named the escalator manufacturer, Westinghouse Electric Corporation, as a defendant, but WMATA is now the only remaining defendant, the plaintiff having voluntarily dismissed her case against Westinghouse.

gent design theory therefore fails as a matter of law.[2]

### B. Failure to Maintain, Inspect, or Repair

Even accepting *arguendo* the plaintiff's argument that escalator maintenance, inspection, and repair are proprietary functions not protected by sovereign immunity, the plaintiff's unsubstantiated allegations as to this claim are insufficient to overcome WMATA's evidence in support of summary judgment. WMATA has demonstrated: (1) that at the time of its design in 1968–69, the Metro system was "state of the art";[3] (2) that the plaintiff was not aware of any slippery or foreign substance on, or any chips or gouges in, the escalator tread;[4] (3) that the width of the slots in the escalator tread was one quarter of an inch, in compliance with the industry safety standard applicable when the escalators were designed;[5] and (4) at two inspections (three days after and about four months before the plaintiff's accident), a D.C. elevator inspector found the escalator in question to be in full compliance with the D.C. Elevator Code.[6]

■ By comparison, the plaintiff has produced no *evidence* to show that WMATA failed to adequately maintain, inspect, or repair the escalator on which her accident occurred. At this stage of these proceedings and especially in light of the substantial countervailing evidence discussed above, it is not enough for the plaintiff to rest on the allegations in her Complaint that the heel of her shoe became caught in an escalator tread slot and that this caused her to fall. It is clear that:

**2.** Perhaps recognizing that the negligent design theory lacks merit, the plaintiff's opposition does not contradict WMATA's argument that the design of the escalator is a governmental function protected by sovereign immunity. Therefore, the Court holds that, in any event, the plaintiff has conceded this issue.

**3.** *See* WMATA's Statement of Material Facts Not in Dispute ("WMATA SMF") ¶ 4. Since the plaintiff has failed to include with her opposition a statement setting forth material facts that remain in dispute, the Court will accept as admitted all of the facts contained in the WMATA SMF. *See* Local Rule 108(h) ("In determining a

When a motion for summary judgment is made and supported as provided in this rule, an adverse party *may not rest upon the mere allegations or denials of the adverse party's pleadings*, but the adverse party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e) (emphasis added). Moreover, WMATA does not have a duty to design and build a subway system that is completely accident-proof, *see Sledd v. WMATA*, 439 A.2d 464, 469 (D.C.1981), nor is WMATA required to constantly improve its subway system by incorporating every new safety device that may become available, *see District of Columbia v. Pace*, 498 A.2d 226, 229 (D.C.1985). In sum, because "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" and because "there [is no] evidence on which the jury could reasonably find for the plaintiff," *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), the Court will grant summary judgment for WMATA on the plaintiff's inadequate maintenance, inspection, or repair claim.

### C. Duty to Warn

■ Similarly, on this record, the Court has no alternative but to hold as a matter of law that WMATA did not have a duty to warn the plaintiff about the possibility that her high-heeled shoe might become caught

motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

**4.** *See* WMATA SMF ¶¶ 14–15.

**5.** *See id.* ¶¶ 17–19; WMATA Exhibit 1 (Affidavit of Ted Perper); WMATA Exhibit 2 (Affidavit of Melba Bayne); WMATA Exhibits 3, 5.

**6.** *See* WMATA SMF ¶¶ 20–21; WMATA Exhibit 1 (Affidavit of Ted Perper).

in one of the slots of the escalator tread. It is axiomatic that, regardless of whether the theory of liability is negligence or strict liability, a duty to warn does not arise absent the existence of an unreasonably dangerous condition or product. *See, e.g., Brooks v. WMATA*, 861 F.2d 1282, 1283 (D.C.Cir.1988) (per curiam). The evidence that WMATA has presented to show, as discussed above, that the slots in the escalator tread complied with applicable safety standards and that the escalator passed inspection by a D.C. elevator inspector is sufficient to overcome the allegation—which the plaintiff has again failed to substantiate with any evidence—that the escalator tread was unreasonably dangerous. Furthermore, under these circumstances any warning would have been unnecessary because the presence of slots in the escalator treads was sufficiently apparent and obvious that a reasonable person in the plaintiff's position—wearing high-heeled shoes with heels only approximately one-quarter inch wide, WMATA SMF ¶ 13—would exercise extra care in maneuvering about the escalator treads. *See Ellis v. Safeway Stores, Inc.*, 410 A.2d 1381, 1383 (D.C.1979) ("Generally, there is no duty to warn of a danger which is as well known to the invitee as to the owner."). Thus, in the absence of an unreasonably dangerous condition and in light of the open and obvious nature of the slots in the escalator tread, WMATA did not have a duty to warn.

### D. Other Claims

■ The plaintiff's other claims are also without merit and are easily resolved. For the same reasons that the plaintiff's failure to maintain and duty to warn claims are unsuccessful, her breach of express or implied warranties claim must fail. Again, the plaintiff has not produced any evidence to show that the escalator malfunctioned or that there was anything unusual or dangerous about the slot in which her heel become lodged. *See* WMATA SMF ¶ 15 (to the plaintiff, the escalator step looked like any other Metro escalator step).

■ Nor may the plaintiff simply present the fact that she fell after catching her heel in the escalator tread slot and rely upon the doctrine of *res ipsa loquitur* to establish that WMATA necessarily was negligent. *See, e.g., Bell v. May Dep't Stores Co.*, 866 F.2d 452, 455 (D.C.Cir.1989) ("mere occurrence of an accident ... does not necessarily permit jury to infer negligence"). The threshold requirements for invoking *res ipsa loquitur* are: (1) the event must be one that would ordinarily not occur absent someone's negligence; (2) it must be caused by an agency or instrumentality within the defendant's exclusive control; and (3) it must not have been due to any voluntary action or contribution by the plaintiff. *Rassoulpour v. WMATA*, 826 F.2d 98, 100 (D.C.Cir.1987) (quoting *Londono v. WMATA*, 766 F.2d 569, 571 (D.C.Cir.1985)). First, since it is not at all unusual for high-heeled shoes to catch in various places, such as sidewalk gratings or manhole covers, the Court cannot conclude that the plaintiff's shoe becoming lodged in an escalator tread is the type of event that would ordinarily occur only due to WMATA's negligence. *See Prosser & Keeton on Torts* § 39, at 246 (1984) (*res ipsa loquitur* does not apply to "many accidents [including *inter alia* a tumble downstairs] which, as a matter of common knowledge, occur frequently enough without anyone's fault"). Second, under one reasonable interpretation of this record, the "agency or instrumentality" that caused the plaintiff's fall was her high-heeled shoe, which by no means was in WMATA's exclusive control. Third, the plaintiff may have been solely responsible for, or at least contributed to, her fall by not exercising sufficient care in stepping sideways on the escalator tread.[7] Thus, the Court holds, as a matter of law, that the plaintiff is not entitled to the *res ipsa loquitur* inference that WMATA was negligent.

---

7. *See Bell,* 866 F.2d at 456 ("Plaintiff must establish not only that the accident possibly resulted from defendant's negligence but that, given the other possibilities, the defendant's negligence most probably caused the accident. Accordingly, one cannot rely on *res ipsa loquitur* if causes other than the defendant's negligence might just as well have produced the accident.").

Finally, the plaintiff's claim that WMATA breached its duty to provide readily accessible transportation alternatives to escalators within the Metro system is both legally and factually frivolous. What types of transportation to provide within the Metro system is a design decision and therefore, as discussed above, is a governmental function within the scope of WMATA's sovereign immunity. Moreover, WMATA has presented evidence—which the plaintiff has admitted by failing to dispute it, *see supra* note 3—that the L'Enfant Plaza Metro station has elevators available, in addition to escalators, to transport subway passengers within different parts of the station. *See* WMATA SMF ¶ 22; WMATA Exhibit 1 at 2 (Affidavit of Ted Perper).

In conclusion, because the plaintiff has failed to come forward with evidence to rebut WMATA's evidence, which demonstrates that there are no material facts in dispute and that WMATA is entitled to judgment as a matter of law, the Court will grant WMATA's summary judgment motion.

An Order in accordance with the foregoing Memorandum Opinion will be issued of even date herewith.