**WESTINGHOUSE ELECTRIC CORP., Plaintiff,**

v.

**SEAL & CO., et al., Defendants.**

**Civ. A. No. 85–1797 (CRR).**

United States District Court, District of Columbia.

Jan. 21, 1994.

V. Frederick Lyon, John P. Hartley, of Lyon and McManus, Washington, DC, for plaintiff.

Keith M. Bonner, of Brault, Graham, Scott & Brault, Rockville, MD, for defendant Seal and Co., Inc.

Dwight D. Murray, of Jordan Coyne Savits & Lopata, Washington, DC, for defendant Bechtel Associates Professional Corp.

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

The above-entitled cause of action was transferred to the undersigned Judge on July 19, 1993, from the docket of the Honorable George H. Revercomb. At issue in the case is an attempt by Plaintiff Westinghouse Electric Corporation ("Westinghouse") to seek reimbursement from Defendants Seal & Co. ("Seal") and Bechtel Associates Professional Corporation ("Bechtel") for repairs completed on a damaged escalator in the Tenleytown Metrorail Station.

On May 5, 1993, Judge Revercomb issued an Opinion and Order in this matter, affirming the administrative decision of the Army Corps of Engineers Board of Contract Appeals and granting summary judgment in favor of the defendants. At that time, Judge Revercomb directed the Plaintiff to move for summary judgment on any issues remaining in the case or show good cause as to why the suit should not be dismissed. As such, this Court now has before it the Plaintiff's Motion for Summary Judgment, Seal's Opposition to Westinghouse's Motion for Summary Judgment and Seal's Cross Motion for Summary Judgment, Bechtel's Opposition to Westinghouse's Motion for Summary Judgment, Plaintiff's Reply and Opposition to Seal's Cross Motion for Summary Judgment, Further Briefing in support of Plaintiff's Motion for Summary Judgment, Seal's Amended Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment, and Bechtel's Response to Plaintiff's Supplemental Memorandum in support of its Motion for Summary Judgment. After careful review of all of the foregoing submissions, the Court has determined that Plaintiff's Motion for Summary Judgment and Defendant Seal's Cross Motion for Summary Judgment must both be denied.

## II. FACTUAL BACKGROUND

On February 6, 1981, Plaintiff Westinghouse Electric Corporation entered into a contract with the Washington Metropolitan Area Transit Authority ("WMATA") to design, build, and install 42 escalators for nine WMATA subway stations. One of these stations was the Tenleytown Metro Station. Thereafter, in July, 1982, WMATA contracted with Career Consultants, Inc. T/A Honor Guard Security Services ("Honor Guard") to provide unarmed uniformed security guards at various stations, including Tenleytown, on a 24–hour basis. WMATA also entered into contracts with Defendant Seal & Company to provide electrical services in connection with the building of the station, and with Defendant Bechtel Associates Professional Corporation, to perform certain engineering and construction management tasks at the Tenleytown station.

The instant dispute then arose out of an incident that occurred sometime between August 5 and August 7, 1983, before the escalators were completed. During the course of that weekend, a 750 lb. reel of steel wire belonging to Defendant Seal either fell or was pushed down the middle escalator to the bottom floor mezzanine area of the station. On Monday, August 8, 1983, Mr. Jay Smith, a Westinghouse employee, reported the damage to the WMATA Transit Police. An investigation by the WMATA Transit Police later concluded that the damage was a result of vandalism by a person or persons unknown.[1] Although the individual(s) responsi-

---

1. Investigations of this incident were also conducted by WMATA's Bureau of Security Operations.

ble have never been identified, the parties have agreed that the resulting damage to the escalator was not proximately caused by any negligent acts or omissions of Westinghouse or WMATA. *See* Judge Revercomb's May 5, 1993 Memorandum and Order at 2.

After the damage was discovered, WMATA informally directed Westinghouse to make the necessary repairs. Westinghouse complied with this request, incurring what it claims were $91,452.19 in compensable costs.[2] Westinghouse ultimately completed the entire contract, including the repairs to the damaged escalator, within acceptable time constraints and the parties generally regarded the matter as one to be resolved by insurance considerations. *See* Army Corps of Engineers Board of Contract Appeals Decision at 7. On June 25, 1985, Westinghouse filed a claim with WMATA's insurance carrier for reimbursement, but the carrier denied the claim refusing to assume liability for vandalism. Concurrent with the filing of the insurance claim, Plaintiff filed this lawsuit on June 4, 1985 against WMATA, Seal, Bechtel, and Honor Guard.

## III. *PROCEDURAL HISTORY*

Before turning to the issues currently pending before the Court, it is helpful to briefly review the procedural history of this

case. After Plaintiff's Complaint was filed in district court in 1985, this action was stayed by Judge Revercomb on August 11, 1986, pending Plaintiff's exhaustion of its administrative remedies against WMATA.[3] WMATA's Contracting Officer later denied Plaintiff's claim on January 22, 1988.

Relying on the "Permits and Responsibilities" clause in the Westinghouse–WMATA contract, the Contracting Officer determined that Westinghouse was responsible for all materials delivered and work performed until completion and acceptance of the work by WMATA. *See* Board of Contract Appeals Decision at 8. Westinghouse then appealed that decision to the Army Corps of Engineers Board of Contract Appeals ("BCA"). By a divided vote, the BCA affirmed the Contracting Officer's decision on September 30, 1991.[4] *See* Judge Revercomb's May 5, 1993 Opinion (citing *Westinghouse Elevator [sic] Company*, 92–1 B.C.A. (CCH) 24,474, 1991 WL 201602 (Sept. 30, 1991)).

The basis for the BCA's decision was as follows: First, the BCA found that there was no evidence presented that either Westinghouse or WMATA was at fault for the damaged escalator. *See* BCA Decision at 12. The BCA further held that the risk of damage to site work falls within the normal "builder's risk" assumed under the "Permits

2. On April 9, 1984, Westinghouse requested from WMATA a contractual adjustment for this expenditure, but this request was never granted.

3. In *Metro Track Constructors*, C.A. 75–2129, *slip op.*, July 19, 1976, the United States District Court for the District of Columbia described the WMATA Contract disputes procedure. "A two-tiered administrative review procedure, similar to those incorporated in government contracts, is established under the disputes article of the instant contract. Factual disputes covered by the disputes article and not resolved by agreement between the parties are initially decided by the WMATA Contracting Officer. His decision is 'final and conclusive' unless a written appeal is filed within thirty days thereafter. At the appeals level, the Contracting Officer's decision is reviewed by the WMATA Board of Directors or 'its duly authorized representative for determination of such appeals.' " (In the present case, the Army Corps of Engineers Board of Contract Appeals was authorized by WMATA to hear Westinghouse's appeal.)

The Board's decision, or that of its authorized representative, is final and conclusive as to questions of fact "arising under the contract," unless a court of competent jurisdiction determines that the decision is "fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." At every stage of this administrative process, the contractor is afforded the right to be heard and to offer evidence in support of its case. It is further provided that nothing in the procedures established for resolution of fact-disputes precludes consideration of questions of law by the Contracting Officer or by the Board. However, final decisions of such administrative personnel as to legal issues are recognized as having no finality. (Footnotes omitted.)

4. The BCA decision concerned only the rights and liabilities of Westinghouse and WMATA with respect to their responsibilities under their contract. The BCA decision did not apply to Westinghouse's tort or contract claims against the other defendants.

and Responsibilities" clause of the Westinghouse–WMATA contract, and that the risk of loss never shifted from Westinghouse to WMATA.[5]

Second, the BCA was not persuaded by Westinghouse's argument that the "Protective Devices" provision in the contract modified the "Permits and Responsibilities" clause to effectively relieve Westinghouse of its obligation to repair the escalator without an attendant increase in contract price. Rather, the BCA concluded that the "Protective Devices" provision did not limit the scope of the contractor's duties, but instead imposed other duties on Westinghouse. *See* BCA Decision at 9.

Third, the BCA rejected Plaintiff's argument that the loss should be apportioned among the various contractors who were working on the project at the time of the incident. The BCA found nothing in the contract to suggest that losses resulting from vandalism or any other unknown risk would or could be apportioned by WMATA among the various contractors. *See* BCA Decision at 11.

Finally, the BCA acknowledged that only two parties, Westinghouse and WMATA were before the Board on this appeal. As such, the BCA found that since there was no evidence that either of these parties was at fault, the contractual obligations between them remained unchanged. More specifically, only final acceptance of the escalator by WMATA would extinguish Westinghouse's duty to provide a functioning escalator and intervening damage by vandals would not change Westinghouse's obligation to deliver the end product, regardless of any negligence on the part of Westinghouse or any other party.[6]

On December 4, 1991, Westinghouse then filed a motion in District Court to vacate the stay. This motion was granted by Judge Revercomb on February 27, 1992, and Plaintiff was allowed to appeal the BCA's ruling and to proceed against all Defendants.

On May 5, 1993 Judge Revercomb issued an Order upholding the decision of the BCA and dismissing Westinghouse's appeal. In that Order, Judge Revercomb granted Summary Judgment in favor of WMATA, Seal, and Bechtel holding that Westinghouse was liable for the damaged escalator under its contract with WMATA.

In issuing his opinion, Judge Revercomb noted that Westinghouse's appeal was grounded on questions of contract interpretation and therefore reviewed those issues *de novo*. The Court ultimately concurred with the BCA's analysis and conclusion that under the "Permits and Responsibilities" clause contained in the contract between Westinghouse and WMATA, Westinghouse remained clearly responsible for repairing the escalators.

More specifically, Judge Revercomb agreed with the BCA's conclusion that the contract provision in question "means what is says: 'Courts and boards have consistently held that a contractor is not relieved from its responsibilities under the 'Permits and Responsibilities' clause for damage to site work unless the damage is caused by the government itself or by contractors at the site who are acting as direct agents of the Government.'" *See* Judge Revercomb's May 5, 1993 Opinion at 4. As such, because the parties stipulated that the incident was not proximately caused by any negligence on WMATA's part, and because there was no dispute that WMATA had not accepted the escalators at Tenleytown at the time the incident occurred, Westinghouse was thus "clearly responsible" for repairing the escalators under the express terms of the contract. *See* Judge Revercomb's May 5, 1993 Opinion at 4–5.

The Court also rejected Westinghouse's contention that WMATA's decision to provide 24–hour security at the Tenleytown site

---

5. Tribunals have held that such a risk was within the contemplation of the parties when the contract was awarded. *See* BCA decision at 9.

6. In its Findings of Fact, the BCA noted that the WMATA Transit Police had concluded that the damage was caused by vandals. *See* BCA decision at 6. Westinghouse, however, does not stipulate to this fact and continues to allege that the cause is undetermined. *See* Plaintiff's Supplemental Memorandum to Summary Judgment Motion at 2–4.

somehow abrogated or waived the "Permits and Responsibilities" clause so as to shift the risk of loss to WMATA. *Id.* at 5. In addition, Judge Revercomb found that Westinghouse's argument concerning the apportionment of losses under the $100,000 deductible in WMATA's Builder's Risk Policy was also determined to be without merit. *Id.* at 6.

On the basis of the foregoing, the Court thus affirmed the decision of the BCA and dismissed Westinghouse's appeal. Judge Revercomb then directed Westinghouse to file a summary judgment motion on any issues it believed remained in dispute in this case within thirty (30) days of the date of the order, or show good cause why the lawsuit should not be dismissed.[7]

Following the issuance of Judge Revercomb's decision, Plaintiff then filed a Motion for Summary Judgment against Defendants Seal and Bechtel. Both Defendants filed oppositions in response thereto and Defendant Seal also filed a cross-motion for summary judgment. After Plaintiff filed a reply, but before any action had been taken on these motions, the above-captioned case was transferred to the docket of the undersigned Judge.

On July 23, 1993, this Court conducted a status conference attended by Westinghouse, Seal, and Bechtel.[8] At that time, the Court set a schedule designed to permit the parties to further brief all remaining issues in this case, including whether the cause of the damage to the escalator could be attributed to Seal's and/or Bechtel's negligence. In response to this Order, Plaintiff filed a Further Briefing in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Supplemental Motion"). Defendant Bechtel filed a Response to Plaintiff's Supplemental Memorandum in Support of its Motion for Summary Judgment ("Bechtel's Supplemental Response") and Defendant Seal filed an Amended Opposition to Westinghouse Electric Corporation's Motion for Summary Judgment and Seal and Company, Inc.'s Cross Motion for Summary Judgment ("Seal's Amended Opposition"). The aforementioned motions are now before the Court and the following discussion shall address each in turn.

## IV. *DISCUSSION*

### A. *Plaintiff Westinghouse is not entitled to Summary Judgment against Defendant Seal under the doctrine of res ipsa loquitur because there are genuine issues of material fact still in dispute as to cause of the incident and the extent of control exercised by Defendant Seal.*

■ In order to prevail upon a motion for summary judgment, the moving party must demonstrate that there are no genuine issues of material fact still in dispute and that he or she is thus entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In the instant case, Plaintiff cannot sustain this burden and Westinghouse's Motion for Summary Judgment against Defendant Seal under the doctrine of *res ipsa loquitur* must therefore be denied.

As the Plaintiff points out, the law in this Circuit requires that a plaintiff present evidence to establish three elements in order to make out a prima facie case under the doctrine of *res ipsa loquitur:*

> (1) The event must be of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it must not have been due to any involuntary action or contribution on the part of the plaintiff.

*Rassoulpour v. WMATA,* 826 F.2d 98, 100 (D.C.Cir.1987) (citing *Londono v. Washington Metro. Area Trans. Authority,* 766 F.2d 569, 571 (D.C.Cir.1985) (quoting *Bell v. Westinghouse Electric Corp.,* 483 A.2d 324, 329 (D.C.App.1984)). Essentially, the "principle of *res ipsa loquitur* permits a jury to draw

---

7. Honor Guard, one of the original defendants, did not appear before Judge Revercomb and his Order no longer named Honor Guard as one of the defendants in the suit.

8. As Plaintiff no longer seemed to be asserting claims against Honor Guard or WMATA, these parties did not appear before this Court and are no longer considered defendants in this lawsuit.

an inference of negligence based upon special circumstances where direct evidence of negligence is lacking." *See Bell v. May Department Stores Co.*, 866 F.2d 452, 455 (D.C.Cir. 1989). On the facts presented to the Court in this case, a number of genuine questions of material fact remain in dispute with respect to the issues raised by the *res ipsa* legal standard.

More specifically, the Court finds that the cause of the accident presents a genuine issue of material fact which is still in dispute and thereby renders summary judgment inappropriate in this case. Defendant Seal argues that the incident was the result of vandalism—a conclusion with which the Plaintiff disagrees. Indeed, as even the Plaintiff concedes, the "exact cause of the reel's movement down the escalator remains unknown ..." Plaintiff's Motion for Summary Judgment at 2.[9] As such, the Court feels that a trier of fact must be given the opportunity to determine whether or not the incident was caused by some negligence on the part of Defendant Seal or whether the resultant damage in fact stemmed from some act of vandalism or some other cause.[10]

There is also a genuine factual dispute as to whether or not the event in question was caused by an agency or instrumentality within the "exclusive control" of Defendant Seal. Although it is undisputed that Defendant Seal owned the reel of cable discovered at the bottom of the damaged escalator, there is no evidence that Seal possessed exclusive control over it. As suggested above, the possibility that vandals may have pushed the reel down the escalator certainly poses a genuine question of material fact that ought to be resolved by a trier of fact. Moreover,

the fact that Honor Guard, previously a Defendant in this lawsuit, was charged with the actual responsibility of safeguarding the worksite further challenges the notion that the cause of the incident was an agency or instrumentality "exclusively" within the control of Defendant Seal.

In short, Westinghouse is not entitled to an award of summary judgment against Defendant Seal under the doctrine of *res ipsa loquitur* because there are genuine questions of material fact still in dispute as to the cause of the accident and the extent to which Seal maintained exclusive control over that cause. *See Bell v. May Department Stores Co.*, 866 F.2d 452, 456 (D.C.Cir.1985).[11]

**B. Summary Judgment is also inappropriate on the basis of Plaintiff's claim that Westinghouse was a third party beneficiary of Seal's contract with WMATA.**

■ Plaintiff Westinghouse also argues that it is entitled to summary judgment against Defendant Seal on the grounds that Westinghouse was a third party beneficiary of Seal's contract with WMATA and thereby deserves appropriate relief by virtue of Seal's alleged breach. The Court, however, finds that summary judgment is also unwarranted on the basis of this claim.

Both parties agree that Seal's contract with WMATA contains the following provision in paragraph 2.39(a):

The contractor shall not impede or interfere with the work of such other contractors engaged in or about the work and shall so arrange and conduct his work that such other contractors may complete their work at the earliest date possible. The

9. Westinghouse goes on to argue that the cause of the accident is also "unknowable" in large part because the reel belonged to Seal and because Westinghouse itself had already been found not to have been negligent. Although the Court accepts these premises as undisputed facts, they do not necessarily give rise solely to the inference that Defendant Seal must therefore have been negligent. As explained below, there are a number of other plausible explanations for this event and a trier of fact should therefore be permitted to hear and determine the cause of the incident on the basis of a fully developed factual record.

10. The Court notes that a jury might also find negligence on the part of some other party to be the cause of the damage.

11. In *Bell*, the Court noted that "one cannot rely on *res ipsa loquitur* if causes other than the defendant's negligence might just as well have produced the accident...." As the preceding discussion suggests, the evidence before the Court at this stage of the case raises at least the possibility, if not the probability, that vandalism and not negligence on the part of Seal was in fact the cause of the incident.

cooperation of the contractor with other contractors is mandatory.

Westinghouse goes on to argue that "Seal's failure to properly place and/or secure its reel of cable impeded and interfered with Westinghouse's construction of the escalator. Westinghouse is an unnamed third party beneficiary to this clause of the contract and is entitled, as a matter of law, to appropriate relief." Plaintiff's Motion for Summary Judgment at 4–5. Plaintiff then concludes that summary judgment is appropriate because there is "no genuine issue of material fact as to the contract clause or the resulting damage." *Id.* at 5.

The Court, however, cannot reach the same conclusion. Even assuming that Plaintiff is correct in asserting that there are no genuine issues of material fact in dispute as to the contract clause or the resulting damage, Westinghouse would not necessarily be entitled to summary judgment against Defendant Seal. As indicated above, the cause of the incident in question is a factual determination that ought to be resolved by a trier of fact after a full presentation of all relevant evidence. At this stage of the proceeding, the role of Defendant Seal in causing (or failing to prevent) the damage caused by the reel is an issue still in contention between the parties and it cannot therefore be said, as a matter of law, that Seal breached its contract with WMATA.[12]

**C. Westinghouse is not entitled to summary judgment against Defendant Bechtel on the basis of Bechtel's alleged breach of its contractual duty.**

■ Plaintiff Westinghouse also seeks summary judgment against Defendant Bechtel by alleging that Bechtel "took no efforts to supervise Seal and Honor Guard so as to avoid damage to Westinghouse." As such, Westinghouse argues that Bechtel violated its contractual obligation to supervise and coordinate the construction and that this failure resulted in damage to the escalator. Plaintiff thus claims that this breach entitles Westinghouse to appropriate relief as a matter of law.

Once again, the Court is unable to conclude that such relief is appropriate as a matter of law. The question of whether or not Bechtel properly supervised and coordinated the construction at the worksite is a factual determination that ought to be resolved by a trier of fact. There is also a triable issue with respect to the question of whether Bechtel's alleged failure to properly supervise can be said to have caused the damage to the escalator. Accordingly, summary judgment against Bechtel cannot be granted as there are still genuine issues of material fact in dispute.

**D. Seal's cross-motion for summary judgment must also be denied as there are genuine disputes as to the cause of the damage and the contractual liability of the parties.**

■ In filing a cross-motion for summary judgment, Defendant Seal argues that there is no dispute between the parties as to the fact that the damage caused by the reel was the result of vandalism. Seal then goes on to argue that Plaintiff Westinghouse has offered no evidence to justify a finding that the risk of loss in such cases falls on any party other than Westinghouse. Seal thereby asserts that Plaintiff has failed to show good cause as to why this case should not be dismissed.

In opposition to this motion, Westinghouse disputes the notion that vandals caused the damage to the escalator. Plaintiff goes on to argue that Seal would have to rely upon an unsupported police report to establish this fact and that such evidence would be inadmissible at trial. Moreover, Plaintiff also argues that even if Seal were able to establish vandalism as the cause of the incident,

---

**12.** Defendant Seal also strongly contests the notion that Westinghouse is a third party beneficiary of Seal's contract with WMATA. Seal urges the Court to recognize that, at the very least, there remains a disputed question of fact as to whether the parties to the contract intended Westinghouse to be a third party beneficiary. The Court, however, need not even reach these questions as it is clear from the preceding analysis that summary judgment would be inappropriate even if Westinghouse were indisputably a third party beneficiary of the contract because there are still disputed questions of fact with respect to Seal's actual role in the incident that allegedly impeded Westinghouse's contractual performance.

this would not excuse Seal's contractual responsibility to Westinghouse and would therefore not entitle Seal to judgment as a matter of law.

Upon consideration of these claims, the Court again concludes that summary judgment would constitute an inappropriate resolution of these issues at this stage of the proceeding. The evidentiary issues raised by Westinghouse with respect to the question of vandalism highlight the fact that the cause of the incident remains a triable issue of material fact, rendering summary judgment an inappropriate resolution of the remaining issues in this case. Questions as to whether or not any of the parties acted negligently or breached their responsibilities under relevant contractual provisions also remain in dispute and thus pose additional triable issues of fact. As such, the Court is unable to grant either of the motions for summary judgment and this case must therefore be set for trial.

### V. *CONCLUSION*

For all of the foregoing reasons, the Court thus finds that Plaintiff's Motion for Summary Judgment and Defendant Seal's Cross Motion for Summary Judgment must both be denied. The parties have raised genuine questions of material fact as to the cause of the damage to the escalator that would render an award of summary judgment an inappropriate resolution of this matter. Remaining questions as to the negligence of these parties or their respective contractual liabilities must therefore be resolved by a trial on the merits, and the Court shall thus issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### *ORDER*

Upon consideration of the Plaintiff's Motion for Summary Judgment against Defendants Seal and Bechtel, and Defendant Seal's Cross Motion for Summary Judgment against Westinghouse, and all of the responses and replies in opposition thereto, and for the reasons articulated in this Court's Memorandum Opinion of even date herewith, it is, by the Court, this 21st day of January, 1994,

ORDERED that the Plaintiff's Motion for Summary Judgment shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that Defendant Seal's Cross Motion for Summary Judgment shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that counsel for the parties shall appear before the Court, with their representatives, and with full authority to enter into meaningful and appropriate settlement negotiations at 2:00 p.m. on February 15, 1994, and, if these negotiations prove unsuccessful, the above-captioned case shall be set for trial thereafter as soon as the business of the court permits.