Sandra I. LONDONO and Jessica Londono, Appellants,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

v.

WESTINGHOUSE ELECTRIC CORPORATION.

No. 84–5603.

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 1985.

Decided July 2, 1985.

Michael I. Rieger, Arlington, Va., for appellants.

Thomas Fortune Fay, Olney, Md., for appellee.

Before MIKVA and STARR, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This case arises out of a personal injury sustained by a young child on an escalator operated by the Washington Metropolitan Area Transit Authority ("WMATA"). The plaintiffs' case rested on the doctrine of *res ipsa loquitur,* but the District Court concluded that they could not establish facts sufficient to permit a jury verdict for them

based on that theory. Our examination of District of Columbia law, including an important judicial decision rendered after the District Court's ruling in the case at hand, persuades us that the facts which the plaintiffs may be able to prove would be adequate to support a *res ipsa loquitur* theory. For that reason, we reverse and remand the case to the District Court for further proceedings.

## I

Jessica Londono was approximately two and one-half years old at the time of the incident in question. She was riding on an escalator descending to a WMATA metro rail station in Washington, D.C., in the company of her mother and four other adult relatives, when she suddenly screamed in pain. Upon examination by her mother, Jessica was discovered to have sustained a significant laceration of her right leg. The incident was reported to WMATA personnel, and Jessica received medical treatment.

Plaintiffs brought a diversity action in United States District Court for the District of Columbia, and defendant moved for summary judgment. In opposition to that motion, plaintiffs made clear that they were relying on a theory of *res ipsa loquitur*. The District Court held that plaintiffs had "not established facts sufficient to invoke *res ipsa loquitur,*" Memorandum Opinion at 3, and granted summary judgment in favor of WMATA. The plaintiffs' major failing, in the District Court's view, appears to have been an inability to show the specific cause of the accident:

"First and foremost," plaintiffs have failed to demonstrate a probability that the escalator or part thereof, rather than

some other instrumentality, is the cause of the child's injury. The cause of the accident is not known and it simply is not enough to allege that the accident occurred while plaintiffs were descending on an escalator. The nature of the child's injury indicates a possibility that she might have been cut by some protruding object or the like connected to the escalator wall. Not only is this sheer speculation, but inspections done by WMATA and Westinghouse both before and immediately after the accident failed to disclose any such offending instrumentality. Nelson Aff. at 1; Westinghouse Motion for Summary Judgment, Ex. B. Moreover, the specific vertical direction of the child's laceration points away from an injury caused by an object on the escalator wall, since such an instrumentality would likely produce a diagonal cut.

Memorandum Opinion at 3–4.[1] The court thus relied upon one fact which was, in truth, disputed between the parties, namely the immediately of a post-incident inspection, *compare* Defendant's Statement of Material Facts as to Which There Is No Genuine Issue, *reprinted in* Appendix to Brief for Appellant ("Appendix") at 6–7, *with* letter of plaintiffs' attorney to defendant's attorney with copy to the court, *reprinted in* Appendix at 20; the court also relied upon one conclusion for which there appears to have been no evidence, namely, that the direction of the laceration indicated a cause other than the escalator.[2]

Recognizing that causation may be established through circumstantial evidence, the District Court nonetheless opined that the evidence which had been adduced failed to "eliminate[ ] from consideration a whole

1. Westinghouse Electric Corp., the manufacturer of the escalator, was a third party defendant below but is not a party to the appeal. The Nelson Affidavit referred to by the District Court is that affidavit captioned "Affidavit in Support of Motion of Defendant [WMATA] for Summary Judgment," which is reprinted in Appendix to Brief for Appellant at 29. The Westinghouse submission indicated maintenance or repair work done eight days prior to the incident.

2. A photograph of the wound was submitted with defendant's Memorandum of Points and Authorities of Support of Motion for Summary Judgment, *reprinted in* Appendix at 9. That Memorandum also contained an argument by defense counsel that the direction of the laceration pointed away from its having resulted from a protruding object.

host of other possible causes." Memorandum Opinion at 4–5. Since plaintiffs' evidence did not make her theory reasonably probable, but merely possible, the court refused to allow a jury to speculate on causation and thus granted summary judgment for the defendant.

## II

Under applicable law, "summary judgment is proper only where there is no genuine issue of material fact and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Byers v. Burleson*, 713 F.2d 856, 859 (D.C.Cir.1983) (citing *E.P. Hinkel & Co. v. Manhattan Co.*, 506 F.2d 201, 204 (D.C.Cir.1974); *Davidson v. Coyne*, 347 F.2d 471, 472 (D.C.Cir.1965)). The burden rests on the moving party to show the absence of any real factual issue. *Alexander v. Pan American World Airways, Inc.*, 757 F.2d 362, 363 (D.C.Cir.1985) (citation omitted). "Indeed, the record must reveal that the party opposing the motion would not be entitled to prevail under any discernible circumstances." *Kreuzer v. American Academy of Periodontology*, 735 F.2d 1479, 1495 (D.C.Cir.1984).

■ Since the plaintiffs' case rests on a theory of *res ipsa loquitur*, our analysis naturally must be informed by the elements of that theory as articulated in the local courts of this jurisdiction. As good fortune would have it, the District of Columbia Court of Appeals has spoken quite recently to the elements of *res ipsa loquitur*. As articulated by that court, the conditions required for application of that familiar principle of tort law are as follows:

(1) The event must be of the kind which ordinarily does not occur in the absence of someone's negligence;

(2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;

(3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Bell v. Westinghouse Electric Corp.*, 483 A.2d 324, 329 (D.C.1984) (quoting W. Prosser, *Law of Torts* § 39, at 214 (4th ed. 1971) ).

■ While the articulation of these elements in *Bell* differs from some earlier statements in the D.C. cases, *Bell* transmits no signal that those earlier statements are now to be considered invalid. Thus, it is still the law of the District of Columbia that "[t]he party who seeks to rely on *res ipsa loquitur* must establish that 'the cause of an accident is (1) known, (2) in the defendant's control, and (3) unlikely to do harm unless the person in control is negligent.'" *Washington Sheraton Corp. v. Keeter*, 239 A.2d 620, 622 (D.C.1968) (quoting *Washington Loan & Trust Co. v. Hickey*, 137 F.2d 677, 679 (D.C.Cir.1943), and citing *Uberti v. District of Columbia*, 215 A.2d 766 (D.C.1966)). The important aspect of this earlier, alternative formulation of *res ipsa loquitur* is that the cause of the accident must be known before we can determine that the causal instrument was within the exclusive control of the defendant and that the injury was not due to an act of the plaintiff. *See Jones v. Safeway Stores, Inc.*, 314 A.2d 459, 461 (D.C.1974) ("the doctrine of *res ipsa loquitur* ... does not come into play in cases where the cause of the accident is unknown and the instrumentality of the injury was not shown to be under the exclusive control of the defendant") (citations omitted).

We turn then to the question whether the plaintiffs could adduce sufficient evidence from which a jury would properly be permitted to find the cause of Jessica's laceration. Clearly, if the cause is looked at restrictively as some particular, identified protruding object, there is and will likely be insufficient evidence properly to get to the jury. The post-incident inspection, at whatever time it was done, turned up no such protruding object; in addition, no evidence was forthcoming that any of the adult relatives who accompanied Jessica on the fateful escalator ride observed any such object. However, it is not at all clear that, under District of Columbia law, our view of "cause" should be so restricted

to an object or instrument other than the escalator. If, instead, the escalator itself could properly serve in law as the cause of the accident, plaintiffs could satisfy the elements of *res ipsa loquitur* without establishing the *precise means* by which the escalator brought about the injury.

■ Establishing that the escalator was the cause of Jessica's injury, without demonstrating how the laceration occurred, would naturally have to rest on circumstantial evidence; but it is elementary that "facts can be established by circumstantial as well as direct evidence," *Kerlin v. Washington Gas Light Co.*, 110 F.Supp. 487, 488 (D.D.C.1953), *aff'd*, 211 F.2d 649 (D.C.Cir.1954). To be sure, "[w]hen plaintiff relies on circumstantial evidence to establish causation as an element of *res ipsa loquitur*, the evidence must make plaintiff's theory reasonably probable, not merely possible, and more probable than any other theory based on the evidence." *Quin v. George Washington University*, 407 A.2d 580, 585 (D.C.1979) (citing *Palleson v. Jewell Cooperative Elevator*, 219 N.W.2d 8, 13 (Iowa 1974); *Kerlin v. Washington Gas Light Co.*, *supra*, 110 F.Supp. at 488). However, if we bear in mind that it is the *cause* of the injury rather than the mechanism that must be established, *see Kerlin v. Washington Gas Light Co.*, *supra*, 110 F.Supp. at 488 ("defendant confuses the cause of the accident with the manner in which it was caused, lack of knowledge of which, in plaintiff, is a reason for the doctrine of *res ipsa loquitur*"), it is not at all clear that plaintiffs would be unable to establish causation.

■ We pause here to recall that the District Court's conclusion was based in part on the conclusion that an inspection had occurred immediately after the incident. That fact is, however, very much in dispute; the only affidavit attesting to a post-injury inspection gives no indication whatever of the time frame for the inspection, *see* Affidavit in Support of Motion of Defendant [WMATA] for Summary Judgment, *reprinted in* Appendix at 9. The trial judge also concluded that the direction of the child's laceration pointed away from the injury's having resulted from a protruding object. There appears to be no evidence on this point, however, other than a photograph of the laceration, *see supra* note 2. Without such evidence, we hesitate to reach a definitive medical conclusion as to the direction of the motion and nature of an object necessary to inflict Jessica's particular laceration. While common sense and common human experience may support the trial court's conclusion in this respect, this finding, as it were, may well have been infected with the conclusion that an immediate post-injury inspection yielding up no evidence of any injury-causing object had in fact been accomplished.

When these two underpinnings are removed from the District Court's decision, it becomes considerably less clear that plaintiffs cannot prove their case. Plaintiffs can certainly offer testimony as to the circumstances surrounding the injury, *i.e.* that Jessica was simply riding on the descending escalator in the company of adult relatives, *see* Plaintiff's Answer to Defendant's Interrogatories at Interrogatory 28, *reprinted in* Appendix to Brief for Appellee at 1–2; moreover, the potential exists for medical testimony as to the nature of the offending instrumentality. Such evidence may well provide adequate circumstantial grounds on which to conclude that the injury was caused by the escalator.

### III

Our discussion thus far has rested on two assumptions. First, we have assumed that the escalator itself, rather than a particular, identified protruding object, may be viewed as the cause of an accident. Second, we have assumed that the fact that an individual is standing on a moving escalator and receives a laceration on the lower part of the leg provides, in itself, some evidence that the laceration was caused by the escalator. Our willingness to make these assumptions under District of Columbia law is guided by the recent District of Columbia Court of Appeals decision to which we have referred and which was

rendered after the District Court's ruling in the instant case.

In *Bell v. Westinghouse Electric Corp., supra,* plaintiff had been injured when her foot became caught in a WMATA escalator causing her to fall. Plaintiff testified that, while descending, "she suddenly felt something 'tugging' at her shoe" and that the heel of the shoe broke when she tried to pull free. 483 A.2d at 324. She was also able to offer into evidence the heel of her sandal which showed damage from being grasped by escalator treads. The court held that these facts supported an instruction on *res ipsa loquitur,* stating that "the doctrine of *res ipsa loquitur* applies where 'direct evidence of negligence is lacking, or where there is "little evidence," or where the cause of the injury is left in doubt by the evidence or not clearly shown.'" *Id.* at 329 (quoting *Levy v. D.C. Transit System, Inc.,* 174 A.2d 731, 733 (D.C.1961), and citing, *inter alia, J.C. Penney Co. v. Livingston,* 271 S.W.2d 906 (Ky.1954); *Simmons v. City Stores Co.,* 412 F.2d 897 (5th Cir. 1969); *Sanone v. J.C. Penney Co.,* 17 Utah 2d 46, 404 P.2d 248 (1965)). While the facts of *Bell* may readily be distinguished from the case at hand, it is clear from the opinion that, under District of Columbia law, *res ipsa loquitur* can apply even where the cause of the accident is in doubt or not clearly demonstrated.

What is not clear from the *Bell* decision is precisely how much evidence is required to move from the province of speculation to the realm of "in doubt" or "not clearly shown." It is also unclear from *Bell* whether "cause" must be identified with greater specificity than pointing to the escalator as a whole, since in that case the tread could be pointed to as the particular instrumentality of the injury. Fortunately, we are not left to wallow in uncertainty in this respect, for *Bell,* through the cases from other jurisdictions relied upon for the proposition which the *Bell* court embraces, provides useful guidance to us. We turn now to those cases, which as we will see are quite helpful to plaintiffs' theory.

In *J.C. Penney Co. v. Livingston,* 271 S.W.2d 906 (Ky.1954), plaintiff, who was a tender twenty-two months old at the time of the injury, was descending an escalator in the company of his older sister. He suddenly "hollered," as the testimony vividly put it, and his sister saw that her young brother's hand was caught in the escalator step behind him. Although no explanation was forthcoming as to how young Master Livingston's hand became caught in the steps, the Kentucky court nonetheless held that it was a proper case for *res ipsa loquitur.* The court stated:

> It is ... common knowledge that the ordinary escalator is completely safe even for small children, and that thousands of children ride them daily without injury or danger of injury. Yet, in this case it is established that plaintiff's hand was caught in the machinery of the escalator while he was riding where he was expected to ride. It seems to us this creates a logical inference that there was a defect in the escalator which made it unsafe for small children; and if the escalator was unsafe for children to use, then the defendant was negligent in making it available to children.

*Id.* at 908. Again, the facts of the Kentucky case are distinguishable from Jessica's situation by virtue of the fact that the mechanism of the injury to young Livingston was shown with greater definiteness than in the case at hand. However, the *Livingston* decision still offers useful guidance for our case. First, the Kentucky court's emphasis on the normal safety of escalators indicates that it is the escalator as a whole that is the instrumentality under the defendant's control, rather than the treads or any particular protruding object. Second, the quoted language would seem to ring equally true when "the plaintiff's hand was caught in the machinery of the escalator," the situation with young Livingston, is replaced by "the plaintiff's leg was severely lacerated," the situation in our case.

*Livingston,* moreover, does not stand alone. A second case relied upon by the District of Columbia Court of Appeals,

*Simmons v. City Stores Co.,* 412 F.2d 897 (5th Cir.1969), was decided under Alabama law. In *Simmons,* the plaintiff was, in the recurring manner evidence in these cases, descending on an escalator. Halfway down to the basement, the plaintiff heard a cracking noise and felt something hit her heel. She was thrown forward, blacked out, and regained consciousness only when she had come to rest on the basement floor. She saw nothing on the escalator which could have struck her. There were no witnesses. Based on what it concluded to be the availability of *res ipsa loquitur,* the Fifth Circuit overturned the district court's grant of directed verdict in favor of the defendant. That case, in our view, is considerably less distinguishable from Jessica's. Here too in our case, Jessica was descending an escalator. From her scream, we may conclude that she felt something cut her, yet no one was able to identify what it was that directly inflicted the wound.[3] The instrumentality, which was under the direct control of the defendant, that caused the injury in *Simmons* can only be viewed as the escalator as a whole. That view, it seems to us, may be carried over to the case at hand. The only distinctions, the lack of a cracking noise and being cut rather than struck, are simply irrelevant to our analysis.

Finally, the case cited by the District of Columbia Court of Appeals which is most analogous to the case before us is *Sanone v. J.C. Penney Co.,* 17 Utah2d 46, 404 P.2d 248 (1965). In that case, a two and one-half year old child was descending on an escalator. Halfway down she cried, "Mommy, my foot is caught"; her mother picked the child up and found a deep, severe laceration extending from just below the knee to just above the ankle. *Id.* at 249. The court held that *res ipsa loquitur* applied, even though "[d]ue to the nature of an escalator it was impossible for the plaintiff

to know or to show just what caused her injury," *id.* The court echoed and cited *Livingston,* stating:

> It is common knowledge that escalators are widely used in public buildings ... and that thousands of people, including children, use them daily without injury. It is certainly not unreasonable for one to assume that it is safe to use them in the manner and for the purpose for which they were intended. Nor does it depart from reason to draw the inference that if an escalator is so used and an injury occurs there was something wrong in either the construction, maintenance, or operation of the escalator.

*Id.* at 249–50 (citations omitted).

The single, arguably relevant distinction that may be drawn between *Sanone* and the instant case is that in *Sanone* the child cried out, "Mommy, my foot is caught," while in our case Jessica simply screamed in pain. Whatever a creative torts professor might be able to accomplish with this distinction, we despair of reasonably distinguishing the case on that basis. In the first place, we find it highly difficult to place substantial reliance on differences in the reportive content of the excited utterances of two and one-half year olds who are caught up in the unhappy process of sustaining severe lacerations. In the second place, in *Sanone,* contrary to the child's description of the event, her mother was in fact able to pick her up, leading to the discovery not that the little girl's foot was caught but that her leg had been lacerated. *See id.* at 249.

These three cases from other jurisdictions, expressly relied upon by the District of Columbia Court of Appeals in *Bell,* persuade us that under the law of the District of Columbia the cause of Jessica's injury may be identified generally as the escalator

---

**3.** At oral argument, counsel for WMATA suggested, apparently for the first time in these proceedings, that Jessica may have sustained the injury before stepping onto the escalator, and that her ensuing screams of pain may have represented a delayed reaction. We merely note that nothing in the record lends the slightest support to this raw speculation and observe that common experience utterly belies the fanciful proposition that a small child sustaining a severe laceration would stoically bear the pain until she reached the tranquil, reassuring safety of a moving escalator.

rather than a particular, identified protruding object. Moreover, these cases show that the circumstance of being injured while standing on a moving escalator provides evidence that the escalator was the cause of the injury. In sum, we are unable to conclude that the District of Columbia Court of Appeals would have cited those cases in discussing the availability of *res ipsa loquitur* to escalator injuries without having been fully cognizant of their factual settings and reasoning. We, therefore, carry the settings and reasoning of those cases over to the case at hand. We hold, in light of *Bell*, that it is possible for plaintiffs to prove facts sufficient to support a case based on *res ipsa loquitur*. For that reason, the judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Wald, Circuit Judge, dissented in part and filed opinion.