**William C. BARWICK, Appellee,**

**v.**

**UNITED STATES of America, Department of the Interior.**

**Appeal of OTIS ELEVATOR COMPANY.**

No. 89–5478.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 23, 1990.

Decided Jan. 18, 1991.

Timothy E. Howie, Bryantown, Md., with whom W. Scott Sonntag, Upper Marlboro, Md., was on the brief, for appellant Otis Elevator Co.

Laurie S. Fulton, Washington, D.C., for appellee William C. Barwick.

Jay B. Stephens, U.S. Atty., R. Craig Lawrence and James N. Owens, Asst. U.S. Attys., Washington, D.C., entered appearances for appellee U.S. Dept. of Interior.

Before MIKVA, RUTH B. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Dissenting opinion filed by Circuit Judge SENTELLE.

MIKVA, Circuit Judge:

William Barwick sued Otis Elevator Company ("Otis") for injuries resulting from the malfunction of an Otis elevator at the John F. Kennedy Center in Washington, D.C. A jury returned a verdict in favor of Mr. Barwick for damages of $4000. On appeal from the judgment entered on the jury's verdict, Otis challenges the district court's denial of its motion for directed verdict, and the court's instruction to the jury on *res ipsa loquitur.* We affirm the judgment of the district court.

## I. BACKGROUND

William Barwick entered an elevator in the Kennedy Center accompanied by three friends. The elevator began to ascend. It stopped between the third and fourth floors, jerked as if it were going up, and stopped again. The elevator lights flickered on and off several times and went out. Although the elevator was equipped with an emergency telephone, Mr. Barwick and his friends were unable to open the door to the telephone at first. They tried to summon help by ringing the emergency bell, banging on the door, and yelling. Mr. Barwick finally succeeded in opening the telephone door and called for help. There were no Otis maintenance personnel on duty, so an emergency repairman was called. Some two hours after the initial stop, the elevator finally ascended, and the plaintiff and his companions were able to get out. The emergency repairman found the elevator to be "on safety." Tellingly, he repaired it by changing the H1 and H2 contacts. H1 and H2 contacts are parts of the elevator control system that supply proper amounts of voltage and current for the motor to operate; an elevator goes on safety by coming to a stop whenever it overspeeds for any reason.

During this ordeal, Mr. Barwick experienced chest pains. He was treated initially at the Kennedy Center first-aid station and then transported to George Washington University Hospital. Mr. Barwick brought this action against Otis alleging negligence in failing to maintain the elevator in a reasonably fit and safe condition and failing to have emergency personnel available at reasonable times. A trial ensued in which Mr. Barwick relied on the *res ipsa loquitur* doctrine to establish Otis' negligence. Otis moved for a directed verdict on the grounds that Mr. Barwick had not established a *prima facie* case of negligence and that the *res ipsa loquitur* doctrine was inappropriate. The court denied Otis' motion for a directed verdict. The jury returned a verdict for Mr. Barwick, and the district court ordered judgment on the verdict.

## II. ANALYSIS

Federal jurisdiction in this case is based on the parties' diverse citizenship. In a diversity case the district court and, on review, this court must follow local District of Columbia law. *See Kuwait Airways Corp. v. American Security Bank,* 890 F.2d 456, 460 (D.C.Cir.1989). We must therefore abide by the common law of the District of Columbia governing the doctrine of *res ipsa loquitur. See, e.g., Bell v. Westinghouse Elec. Corp.,* 483 A.2d 324, 329 (D.C.1984).

A. *Instruction Concerning* Res Ipsa Loquitur

■ The principle of *res ipsa loquitur* "permits a jury to draw an inference of

negligence based upon special circumstances where direct evidence of negligence is lacking." *Bell v. May Department Stores*, 866 F.2d 452, 455 (D.C.Cir.1989). Before submitting the case to the jury, however, the court must determine whether the inference may be reasonably drawn by the jury, *see* RESTATEMENT (SECOND) OF TORTS § 328D(2) (1965), and the plaintiff must establish that: (1) the event was of a kind that ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff. *Bell v. May*, 866 F.2d at 455; *Rassoulpour v. Washington Metro. Area Transit Authority ("WMATA")*, 826 F.2d 98, 100 (D.C.Cir.1987); *Londono v. WMATA*, 766 F.2d 569, 571 (D.C.Cir.1985).

As the parties do not dispute that the elevator was within Otis' exclusive control and that Mr. Barwick did not voluntarily contribute to its malfunction, we focus our attention on the first factor: whether Mr. Barwick established that the event, defined as the elevator's going on safety, ordinarily does not occur in the absence of someone's negligence. Mr. Barwick must establish that, considering all other plausible explanations for the incident, the event was "most probably caused" by someone's negligence. *Bell v. May*, 866 F.2d at 456. Barwick need not eliminate with complete certainty every other possible cause; he need only introduce evidence with sufficient probative force to support the inference that the plaintiff's accident was probably the result of negligence. *McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256, 1261 (D.C.1983). The question is whether the trial judge properly determined that, in light of everyday experience or evidence in the record, a jury could conclude that the event was more probably than not the result of someone's negligence. *See Quin v. George Washington University*, 407 A.2d 580, 583 (D.C. 1979). If the answer is yes, we must affirm the decision of the district court. *See Bell v. Westinghouse Elec. Corp.*, 483 A.2d at 329.

Mr. Barwick called Walter Hanner, a senior Otis Elevator supervisor, as an expert witness. Mr. Hanner's testimony enumerated five reasons why an elevator could go on safety. As Otis concedes on appeal, however, undisputed evidence eliminated three of these explanations, leaving these two: (1) a momentary sag in electrical power, and (2) the burnout of H1 and H2 contacts. Unlike the elevator malfunction in *Bell v. May*, which could have resulted from any of several equally plausible causes, the elevator malfunction in this case has been narrowed to two most likely causes. *Compare Bell v. May*, 866 F.2d at 457 (holding that *res ipsa loquitur* was inappropriate because plaintiffs had "made no effort either to rebut the non-negligent causes or to identify defendant's alleged negligence as the most probable cause of the injury").

At trial, Mr. Hanner testified that, "to a reasonable degree of scientific certainty," the electrical power fluctuation was a "contributing factor" to the elevator's going on safety, that Otis was not responsible for such power fluctuation, and that the burnout of the H1 and H2 contacts can happen only when an elevator is descending (not when the elevator is ascending, as was the case in this incident). At his deposition, however, Mr. Hanner had testified, without ever distinguishing between ascent and descent, that the burnout of H1 and H2 contacts was the "most likely suspect" of an elevator's going on safety. When confronted with his earlier statement, the witness did not disavow it in any way.

Barwick has produced enough evidence from which a reasonable jury could conclude that the accident was more probably than not the result of someone's negligence. Although Mr. Hanner testified at trial that a power fluctuation contributed to the accident, he conceded that on the same night (or, for that matter, at any other time over the course of several years), no other elevator in the Kennedy Center went on safety due to power problems. Thus, a reasonable jury could discount the power sag explanation relied upon by Otis, leaving the H1 and H2 con-

tacts as the most plausible cause of the accident.

We must then evaluate whether a reasonable jury could have found that the failure of the H1 and H2 contacts occurred, more probably than not, as a result of someone's negligence. Mr. Barwick established that the emergency repairman changed the H1 and H2 contacts that night and that the contacts normally need replacement every six to eight months. But Barwick could not, we stress, determine whether routine checks on the condition of the H1 and H2 contacts had been properly performed, because Otis lacked complete records of its maintenance of the Kennedy Center elevators, and the particular H1 and H2 contacts replaced by the emergency repairman were removed immediately after the accident. The *res ipsa loquitur* doctrine was intended to remedy precisely this sort of imbalance in information between plaintiff and defendants. *Cf. Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687, 689 (1944) ("Without the aid of the doctrine a patient who received permanent injuries of a serious character ... would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability."). Under these circumstances, a reasonable jury could conclude that the elevator malfunction was probably caused by the undiscovered deterioration of the H1 and H2 contacts.

Otis asserts that the jury verdict contradicts Mr. Hanner's trial testimony that the H1 and H2 contacts could burn out only when the elevator is descending. A reasonable jury could have discounted Mr. Hanner's assessment in light of his affiliation with Otis and his earlier deposition statement that the failure of the H1 and H2 contacts was the "most likely suspect" of an elevator's going on safety. Mr. Hanner's deposition testimony was admissible at trial, not only for impeachment purposes but also as substantive evidence. *See* FED. R.EVID. 801(d)(1)(A); *Harley–Davidson Motor Co. v. Bank of New England*, 897 F.2d 611, 615 (1st Cir.1990) (noting that where the defendant had impeached plaintiff's expert by pointing to inconsistent statements in his depositions, such statements were also admissible as substantive evidence); *United States v. DiCaro*, 772 F.2d 1314, 1321 (7th Cir.), *cert. denied*, 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986). In sum, the trial judge properly concluded that a reasonable jury could find that the elevator accident in this case was caused by someone's negligence, that the *res ipsa loquitur* instruction was in order, and that, accordingly, the jury could permissibly infer that Otis was negligent.

Our colleague's initial emphasis on the second factor in the *res ipsa* calculus (namely, the supposed lack of proof that the event was caused by an instrumentality within the defendant's exclusive control) is baffling. Otis never argued that it did not have exclusive control over the elevator and all of its mechanical components. In *Bell v. May*, this court focused on the first factor of the *res ipsa* tripod, and (by reading it in tandem with the second factor) required that plaintiffs show that the defendant was somehow negligent. Nothing in *Bell v. May* justifies extracting the second factor, as our dissenting colleague has done, and giving it independent significance. The law of the District of Columbia in no way supports such a reading.

> [U]nder the law of the District of Columbia the cause of [plaintiff's] injury may be identified generally as the escalator rather than the particular, identified protruding object.... [T]he circumstance of being injured while standing on a moving escalator provides evidence that the escalator was the cause of the injury.

*Londono v. WMATA*, 766 F.2d at 574–75. Here, Mr. Barwick's injuries were caused by the elevator, an instrumentality within Otis' exclusive control. The possibility that the elevator's malfunction was caused by some other prior agent or instrumentality in an extended causal chain is a question properly analyzed under the first *res ipsa* factor. To do otherwise would confound the three factors (rendering the third factor relating to contributing causes redundant) and make *res ipsa loquitur* indis-

tinguishable from normal *prima facie* negligence.

**B. *Denial of the Motion for Directed Verdict***

■ A trial judge must direct a civil verdict where there can be "but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id.* at 250–51, 106 S.Ct. at 2511–12. In reviewing the lower court's denial of a motion for directed verdict, "[t]he court must consider all the evidence available in the light most favorable to the non-movant, resolving all conflicts in the evidence in favor of the prevailing party below." *Bell v. May*, 866 F.2d at 455. Our ruling on the propriety of a *res ipsa loquitur* instruction is dispositive of this issue as well. Because there was enough evidence from which a jury, applying the *res ipsa loquitur* instruction, could have concluded that Otis was negligent, a directed verdict for the defendant would have been inappropriate. *See Washington Sheraton Corp. v. Keeter*, 239 A.2d 620, 622 (D.C.1968).

### III. CONCLUSION

Mr. Barwick established that the elevator's going on safety was an event that was more probably than not a result of someone's negligence. Therefore, the district court did not err in denying Otis' motion for a directed verdict and, instead, allowing the case to go to the jury with a *res ipsa loquitur* instruction. For the foregoing reasons, the judgment is

*Affirmed.*

SENTELLE, Circuit Judge, dissenting:

While I believe the district court erred in permitting plaintiff's action to survive defendant's motion for directed verdict and instructing on a theory of *res ipsa loquitur*, I understand how it did so. The trial court operates in real time, generally without a transcript, and with only the memory of the judge and counsel to reformulate the

evidence for assessment of its sufficiency. I am at a loss to explain how the majority of this panel, blessed with the complete transcript of the evidence and ample time to review it, can reach the conclusion that *res ipsa* applies.

As the majority acknowledges, under District of Columbia law (applicable here under the quasi-Erie doctrine treating D.C. as a state, *see Kuwait Airways Corp. v. American Sec. Bank*, 890 F.2d 456, 460 (D.C.Cir.1989)), the *res ipsa* principle "permits a jury to draw an inference of negligence based upon special circumstances where direct evidence of negligence is lacking." Maj.Op. at 886–887 (quoting *Bell v. May Dep't Stores Co.*, 866 F.2d 452, 455 (D.C.Cir.1989) (citations omitted)). Those special circumstances are only present when the plaintiff has established that:

(1) The event [is] of the kind which ordinarily does not occur in the absence of someone's negligence;

(2) [I]t must be caused by an agency or instrumentality within the exclusive control of the defendant;

(3) [I]t must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Bell v. Westinghouse Elec. Corp.*, 483 A.2d 324, 329 (D.C.1984) (quoting PROSSER, LAW OF TORTS § 39, at 214 (4th ed. 1971)).

While there is no argument as to element three, there is no way on the evidence of record in this case that the plaintiff has established either of the first two elements.

As to the question of whether the event "was caused by an agency or instrumentality within the exclusive control of the defendant," as the majority notes, the direct evidence only shows that the elevator went on safety. The expert testimony (the only evidence on causation) set forth at least five possible reasons why an elevator could go on safety:

1. People jumping up and down in the elevator or similar violent movement.

2. A burnout of the H1 and H2 contacts.

3. A malfunction in the governor.

4. A fluctuation in electrical current.

5. An overloaded elevator traveling in the down direction.

The evidence explicitly left open the possibility of other causes. Walter Hanner, the sole expert witness, presenting the only causation evidence, after listing the first four of the above five causes, described the list as "a summary of some of the possible causes. There are a few others that come to mind." Joint Appendix ("J.A.") at 126. He then supplied the fifth possibility noted above as an example, not an exhaustion, of the other possible reasons for unexplained activation of the elevator safety device. J.A. at 125–26.

Even if the list is treated as exclusive, the so-called "undisputed evidence eliminating three of these explanations," Maj.Op. at 887, amounts only to an inconsistency with other evidence in the case. The difficulty, in addition to the obvious possibility that the inconsistent evidence is itself incorrect, is that the two possible causes the majority sees as remaining are just as inconsistent with other evidence as the three the majority eliminates. This is, in fact, evident from the majority opinion, coupled with the evidence referenced in it. Assuming that the majority is correct as to the elimination of all causes except the momentary sag in electric power and the burnout of H1 and H2 contacts (which, concededly, Otis seems to assume on this appeal), the majority in no way justifies discounting the power sag, a cause outside the control of defendant, in favor of the H1 and H2 contacts, a cause at least arguably within the control of the defendant. Indeed, the testimony of Mr. Hanner, if it eliminates any cause, eliminates the contact failure. His testimony is undisputed on the point that the burnout of the contacts can cause the safety to malfunction only when an elevator is descending, not ascending as was the elevator in this case according to plaintiff's own testimony. As no one seriously contends that Otis controlled the power lines, plaintiff has simply failed to establish the element of control of causation.

The majority professes bafflement at my discussion of this second factor in the *res ipsa* calculus. *See* Maj.Op. at 888. They would dispose of this element by the statement that "Otis never argued that it did not have exclusive control over the elevator and all of its mechanical components." This would be more understandable if the plaintiff had established that the injury was caused by some failure of the "elevator and ... its mechanical components." Granted, plaintiff has established that it occurred in the elevator. If this is all that is required for the causation element of *res ipsa*, then everyone buying an elevator, an automobile, or any other mechanical device should be advised that in the event of injury to anyone from its use, a *prima facie* case for your negligence was established when you assumed ownership and control.

Furthermore, even if plaintiff had established that the elevator (presumably in Otis's control), not the power lines (definitively out of Otis's control), caused the event, plaintiff has in no fashion established element one of the *res ipsa* tripod; i.e., that "[t]he event [was] of the kind which ordinarily does not occur in the absence of someone's negligence." *Bell v. Westinghouse*, 483 A.2d at 329 (citation omitted). Even if we eliminate from consideration all other possible causes except the burnout of the H1 and H2 contacts, there is no evidence from which a jury could infer, as to opposed to conjecture, that this malfunction was the result of defendant's negligence. While the majority proudly holds up the fragment of testimony that "the burnout of H1 and H2 contacts was the 'most likely suspect' of an elevator's going on safety," Maj.Op. at 887, the fact that this is *exactly* what the witness said seems to escape them. That is, the reference to those contacts failing being "the most likely suspect" was in reference to the question of *an* elevator's going on safety. Plaintiff never established that it was the most likely cause of the elevator's doing so in this case. And, in fact, the witness made it plain that he could not give any real estimate as to the probability that it was the cause. The same witness, as the majority admits, testified that the H1 and H2 contact failure could not occur under the circumstances alleged by the

plaintiff in this case (that is, a rising as opposed to descending elevator).

Also, contrary to the majority's assertion, Hanner's testimonies at deposition and trial are not inconsistent. His testimony that, in the abstract circumstance of a hypothetical elevator going on safety, contact failure is "the most likely suspect," is not inconsistent in any way with his testimony that such a cause was impossible on the specific facts described by plaintiff. Thus, the majority's references to impeachment are not only inapposite, but unfair.

As the evidence stands, there is no basis upon which a jury could reasonably conclude that the event was more likely than not caused by the failure of the H1 and H2 contacts. However, even if there were evidence from which a jury could find that the contact failure was the most probable cause, indeed, even if it were conclusively established, *res ipsa* still should not apply. Plaintiff has not offered any evidence that contact failure "ordinarily does not occur in the absence of someone's negligence." In *Bell v. May Dep't Stores*, 866 F.2d at 457, we upheld a district court's allowance of a motion for directed verdict in favor of a defendant against a plaintiff asserting *res ipsa* where plaintiffs "made no effort either to rebut the non-negligent causes or to identify defendant's alleged negligence as the most probable cause of the injury." *Id.* (footnote omitted). The present case is not only well within our analysis in *Bell*, but in fact is a stronger one against the application of *res ipsa*. Here, plaintiff not only failed to rebut possible non-negligent causes and failed to identify defendant's alleged negligence as the most probable

cause of the injury, plaintiff also failed to produce any evidence that defendant's negligence was in any percent likely to cause contact failure. So far as we know from the evidence, or for that matter from anywhere, contact burnout may be analogous to electric lightbulb burnout—one of those equipment failures of modern civilization which can cause much difficulty, but which will often occur even in the presence of due or extreme care.

Granted, defendant did not affirmatively eliminate the possibility that its negligence caused plaintiff's injury, but that is not defendant's burden, even under *res ipsa*. As the courts of the District of Columbia (whom we follow in this case) have observed: "[i]t would do violence to the concept [of *res ipsa loquitur*] to permit a jury to balance possibilities rather than probabilities." *Quin v. George Washington Univ.*, 407 A.2d 580, 584 (D.C.1979). In the present case, plaintiff's evidence provides no more than a mere possibility. I would therefore hold that the district court erred in instructing on *res ipsa*. *See Quin v. George Washington Univ., supra*. As there is no other evidence, direct or indirect, of defendant's negligence, I would further hold that the trial court erred in denying defendant's motion for directed verdict.