Elizabeth A. SHEEHAN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 91–1799.

United States District Court, District of Columbia.

May 28, 1993.

**14**

Daniel J. Slattery, Washington, D.C., for plaintiff.

Richard N. Reback, Asst. U.S. Atty., Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND JUDGMENT

JOHN H. PRATT, District Judge.

This Federal Tort Claims Act case was tried to the Court in a four day bench trial on December 15, 16, 17 and 21, 1992. Seven witnesses, in addition to the plaintiff, testified on the plaintiff's behalf. Defendant's case was presented through five witnesses. Over forty documentary exhibits were presented on behalf of each side. At the conclusion of the evidentiary phase the parties were requested to submit findings of fact and conclusions of law.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court now enters the following findings of fact and conclusions of law.

## I. *Findings of Fact*

1. Plaintiff is a fifty-three year old, single female. At the time of trial, plaintiff was a third year law student at the University of the District of Columbia Law School, which she had attended since the fall of 1990.

2. Plaintiff filed the present action under the Federal Tort Claims Act, 28 U.S.C. § 2771, *et seq.*, seeking relief for injuries she sustained from a fall when she was placed under arrest on December 8, 1989.

3. Plaintiff was stopped by an officer of the United States Capitol Police on the night of December 8, 1989, at the corner of Maryland Avenue and 2nd Street, N.E. in Washington, D.C., for operating her motor vehicle under the influence of alcohol. The lawfulness of plaintiff's arrest is not at issue. The parties have stipulated that plaintiff was lawfully arrested for operating her motor vehicle while under the influence of alcohol.

4. When she was stopped, plaintiff advised the arresting officer, United States Capitol Police Officer Thomas M. Knock, that she was disabled and normally used a crutch. That evening, however, plaintiff did not have a crutch or cane in her car.

5. Officer Knock therefore proceeded to administer the sobriety tests to plaintiff while she remained seated in her car. Plaintiff failed two of these tests and refused to take a roadside breathalyzer test.

6. Following the tests, plaintiff got out of her car and began to walk away. Officer Knock thereupon decided to arrest plaintiff for driving under the influence of alcohol. Observing no difficulty in her walking, the officer decided to handcuff plaintiff's hands behind her back.

7. Plaintiff was subsequently transported by United States Capitol Police Officer Kenneth Weaver and Detective Mary Powers in their transport vehicle to the United States Capitol Police headquarters, located three blocks away at 119 D St., N.E. in Washington, D.C.

8. Plaintiff, her arms still handcuffed behind her, was led by the officers to the entrance to the building on D Street, which is the only entrance secured for processing

prisoners. A plywood ramp leads up to that entrance.

9. While walking up the ramp, plaintiff was supported by at least one of the two transporting officers. A third officer held open the door to the headquarters.

10. Upon reaching the top of the ramp, plaintiff claims that she tripped at the threshold of the door because the ramp was not flush with the floor. She fell forward into the building, striking the right side of her head on the floor. Detective Powers, who testified that she was supporting plaintiff from one side, further testified that she herself fell off the ramp in trying to break plaintiff's fall.

11. Plaintiff was transported by ambulance to Georgetown University Hospital's emergency room. She was admitted with a diagnosis of a right orbital fracture (a fracture of the right eye socket), a hematoma behind her right eye, and two facial lacerations which required thirteen stitches. She remained in the hospital overnight and was released the following day.

12. Plaintiff claims that, as a result of this accident, she sustained visual problems and facial asymmetry, as well as symptoms of posttraumatic stress disorder including memory loss, inability to concentrate, severe headaches, amnesia, fatigue, lack of stamina, and impaired mobility.

13. Plaintiff seeks compensation for past and future medical expenses, loss of future income, loss of enjoyment of life, emotional distress, and pain and suffering. The parties have stipulated that plaintiff's medical expenses as a result of this accident total $17,000 to date. Additionally, plaintiff claims future medical expenses of $5,000 for psychiatric care. Plaintiff has presented no further evidence of future costs for medical care.

14. With respect to medical treatment, testimony at trial established that plaintiff suffered injuries to her right eye. Plaintiff's primary care physician, Dr. Karen Myers, testified that effects of the accident included visual problems, facial asymmetry, and scars resulting from the lacerations to plaintiff's face. The finding of facial asymmetry was disputed, however, by defendant's expert witness in neurology, Dr. Richard Restack.

15. There was also testimony presented by plaintiff's psychiatrist, Dr. Ron Costell, that plaintiff experienced symptoms consistent with posttraumatic stress disorder and post concussive syndrome. These symptoms included insomnia, depression, hyperirritability, and flashbacks. It was agreed by the psychiatric expert witnesses that these symptoms generally last for a few months after their onset.

16. Dr. Costell testified, however, that plaintiff experienced the posttraumatic stress disorder symptoms prior to the accident in question and had a history of depression and anxiety. Plaintiff first suffered posttraumatic stress disorder syndromes following a serious biking accident in 1973, which resulted in multiple fractures to her skull, ribs, arms and legs, as well as severe injury to the left side of her brain and to her voice box. She was adjudicated totally and permanently disabled in 1976 and has been receiving Social Security disability benefits since that time. Dr. Costell testified that plaintiff's fall in 1989 may have reactivated the symptoms or created a new syndrome.

17. Dr. Costell estimated that, had the accident in question not occurred, plaintiff would have needed only six months of further psychiatric treatment rather than the two years she continued to receive. Dr. Costell calculated that plaintiff spent $2,000 for the two years of treatment following the fall.

18. Plaintiff presented no evidence regarding permanent brain or neurological injuries. Plaintiff's own physician, Dr. Myers, testified that there was no brain damage. Defendant's expert witnesses, clinical psychologist Dr. Sara Elpern and neurologist Dr. Richard Restack, also testified respectively that there were no signs of cognitive deterioration or brain damage as a result of the 1989 accident. In fact, Dr. Elpern testified that plaintiff performed better in a test of cognitive functioning after the accident than before.

19. With respect to loss of future income, defendant's expert witness, Dr. Brad Schiller, testified that plaintiff's estimate of $450,-

000 was inaccurate because, among other things, it measured future income over the course of plaintiff's lifetime. Instead, Dr. Schiller testified that plaintiff should have estimated her loss of income over her expected work life due to the accident. Dr. Schiller further testified that plaintiff had provided no evidence of any *incremental* impairment resulting from the accident, and that she was not therefore entitled to any compensation for lost earnings.

20. Dr. Schiller testified that, even if the accident were found to have impaired plaintiff's ability to work, an attorney with plaintiff's background and desire to work in public interest could earn only $25,000 per year. It is undisputed that, at the time of trial, plaintiff previously had been enrolled at the Catholic University School of Law in 1986 and 1987, but was found academically ineligible to continue in August 1988. It is further undisputed that, except for one temporary job lasting less than a year, plaintiff has not been employed since 1973.

21. With respect to pain and suffering and loss of enjoyment of life, plaintiff attested that she had no social life for the first six months following the accident. Plaintiff, however, was able to take care of herself immediately after the accident according to her physician, Dr. Myers. Plaintiff was also able to testify in a day long fact finding conference held two months after the accident regarding a complaint she had filed against Catholic University.

## II. *Conclusions of Law*

1. This Court has jurisdiction over the subject matter of the Complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Plaintiff has exhausted her administrative remedies.

2. Under the FTCA, the law of the place where the alleged negligent or wrongful act or omission occurred applies to determine whether the United States would be liable to the claimant in like circumstances. 28 U.S.C. §§ 1346(b), 2674.

3. The law of the District of Columbia properly applies in this case to determine whether the United States would be liable in tort under like circumstances. 28 U.S.C. §§ 1346(b), 2674.

4. In establishing negligence in the District of Columbia, "[t]he burden is on the plaintiff to establish (1) a standard of care, and (2) that a violation of that standard was the proximate cause of the injury." *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C.1978).

5. Where direct evidence of negligence is lacking, the doctrine of *res ipsa loquitur* "permits a jury to draw an inference of negligence based upon special circumstances." *Barwick v. U.S.*, 923 F.2d 885, 887 (D.C.Cir. 1991) (citing *Bell v. May Department Stores*, 866 F.2d 452, 455 (D.C.Cir.1989)).

6. In finding a defendant liable under the doctrine of *res ipsa loquitur*, plaintiff must establish that "(1) [t]he event [is] of a kind that ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the control (exclusive or joint) of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Otis Elevator Co. v. Tuerr*, 616 A.2d 1254, 1258 (D.C.App.1992) (quoting *Otis Elevator Co. v. Henderson*, 514 A.2d 784, 785 (D.C.1986)). "A plaintiff relying on the doctrine 'must demonstrate that the injury ordinarily does not occur when due care is exercised.'" *Id.* (quoting *Marshall v. Townsend*, 464 A.2d 144, 145 (D.C. 1983)).

7. While the evidence is in dispute, this Court finds that special circumstances were present which allow us to find defendant liable for plaintiff's fall pursuant to the doctrine of *res ipsa loquitur*. First, plaintiff would not have fallen were it not for the officers' negligence. It is common sense that the officers have a duty to assist persons walking up a ramp whose hands are handcuffed behind their backs to ensure that they do not fall. In plaintiff's case, the officers breached that duty by failing to hold on to her securely to prevent her stumbling and by failing to break her fall.

8. We further find that the second and third requisite elements of *res ipsa loquitur* are satisfied since the officers were in sole

control of the situation. There were no other parties present who could be held responsible for plaintiff's fall. Further, plaintiff herself could not be held responsible since her control over her movements was limited, not only because she was handcuffed, but also because she had been drinking.

9. Having found defendant liable for negligence, the sole issue remaining is plaintiff's entitlement to compensatory damages resulting from the fall. At the outset, we must recognize that plaintiff on December 8, 1993 was suffering from specific physical and psychological deficits. This fact is not seriously in dispute. We start by pointing out that plaintiff has been diagnosed as having a Borderline Personality Disorder, which diagnosis was based on an independent medical examination of plaintiff and a review of her medical records independent of plaintiff's accident in December 1989.

Against this background, this Court can only award damages which have been proven to a reasonable certainty. "While damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages." *Romer v. District of Columbia,* 449 A.2d 1097, 1100 (D.C.App.1982).

10. Plaintiff has established to a reasonable certainty her expenses for medical care caused by the accident and preceding the trial. The parties have stipulated that plaintiff has incurred $17,000 in medical expenses. Plaintiff, however, has not made any showing of future medical expenses for treatment of any remaining effects from the accident.

11. We further find that there has been adequate evidence that plaintiff, as a result of the December 1989 accident, suffered from symptoms attributable to either post concussive syndrome or posttraumatic stress disorder, which may have resulted in eighteen months further care by a psychiatrist than had been planned. In addition, since Dr. Costell testified that plaintiff was paying him $1,000 per year for the visits, plaintiff should be compensated for $1,500 in psychiatric expenses that she would not otherwise have incurred.

12. As for loss of future earnings, we find that plaintiff has not sufficiently demonstrated that there was any incremental loss of earnings resulting from the accident. Since plaintiff was not in law school at the time of the accident, her graduation was not delayed. Nor is there evidence of permanent injuries that might affect her performance in the future. Her law school performance was marginal at best and any estimate as to her future performance would be entirely speculative.

13. There is, however, sufficient evidence to believe that plaintiff's prior symptoms of memory loss, inability to concentrate, severe headaches, amnesia, fatigue, lack of stamina, and impaired mobility were temporarily aggravated by the accident. Plaintiff also suffered an apparently slight impairment of her vision in her right eye and scars on her face. For this, we find that plaintiff should be compensated by $10,000.

14. As a result of having endured these injuries, we further award plaintiff $5,000 for emotional distress and pain and suffering.

## CONCLUSION

In summary, we find that defendant is liable for plaintiff's fall sustained while she was being escorted to the United States Capitol Police headquarters. We hold that defendant is liable to plaintiff for $33,500 in compensation for injuries resulting from the fall.